LOUM SNOW, JR. *vs.* UNION MUTUAL MARINE INSURANCE
COMPANY.

Bristol.   Oct. 27, 1875. — March 7, 1876.  MORTON & LORD, JJ., absent.

The right to recover for a constructive total loss, on abandonment of a vessel to the
underwriters, depends upon the state of facts when the abandonment is made; and
the abandonment, if justified by those facts, relates back to the time of the loss.

If a vessel is once totally lost by a peril insured against, and the master, using due
diligence, is unable to regain possession of her in such a condition and under such
circumstances as to enable her to pursue the voyage for which she is insured, the
right to abandon and to recover for a constructive total loss remains, without re-
gard to the question whether at some future time, over which the master has no
control, he might be able to regain possession of her on payment of salvage, and
without regard to the proportion between the amount of the salvage and the value
of the vessel.

In an action on a policy of marine insurance, there was evidence that the vessel in-
sured, a whaling vessel, was jammed fast in the ice in the Arctic Ocean, with no
open water in sight, and drifting northwards with the current; that her officers
and crew, finding it impossible to extricate her with the utmost efforts, and being
nearly worn out with fatigue and want of sleep, in order to save their lives, left her
in their boats, taking with them their guns and whaling gear, and, by passing
through narrow strips of water and hauling the boats over the ice, reached the
whaling fleet in safety, fifty miles south of where they left the vessel; that ten
days afterwards, the men, boats and guns being scattered in different vessels, and
some of them having gone home, the ice loosened, and the abandoned vessel was
got out by the master and crew of another vessel, and held for salvage; that the
master of the vessel insured was not able, by the exercise of reasonable efforts, to
obtain a sufficient crew or whaling craft, or to gain possession of the vessel to pur-
sue the voyage on which she was employed, and for which she was insured; that
the vessel was taken by the salvors to San Francisco, and before her arrival there
was abandoned by her owners to the underwriters.  *Held,* that it was competent
for the jury to find a verdict against the underwriters for a constructive total loss.

Under a declaration on a policy of marine insurance for a total loss, a constructive
total loss may be recovered.

It is not necessary, in a declaration on a policy of marine insurance, to allege the
abandonment of the vessel to the underwriters, or the facts necessary to constitute
the total loss relied on.

CONTRACT on a policy of insurance on the ship Helen Snow
and outfits, "wherever she may go on a whaling voyage," from
October 14, 1871, to October 14, 1875.   The vessel was valued
at $10,000, and the outfits at $20,000.

The declaration was as follows: "And the plaintiff says the
defendant made to him a policy of insurance, a copy of which
is hereto annexed, for the sum of eighteen hundred and seventy-

five dollars, on bark Helen Snow, against the perils of the seas and other perils therein mentioned, on a whaling voyage during the time in said policy set forth; and while engaged upon said whaling voyage, the said bark was encompassed in heavy masses of ice in the Arctic Ocean, and so rendered unnavigable and at the mercy of the currents and the masses of. ice around her, and in danger of immediate destruction by being crushed or set aground, with all her outfits, cargo and stores,.so that the officers and crew for the safety of their lives were compelled to leave and abandon her, and seek safety in finding their way on the ice to some other ships or to the land, and so the said whaling voyage was utterly broken up and lost, and said ship and her outfits, cargo and stores were totally lost by the perils of the seas and perils insured against in said policy; and the defendant had due notice thereof, and became bound to pay the sum insured in said policy to the plaintiff, as provided in said policy, before the date of the writ in this case. And the defendant owes the plaintiff therefor said sum of eighteen hundred and seventy-five dollars and interest thereon, as for a total loss under said policy."

At the trial in this court, before *Wells*, J., it appeared that the vessel was left by the master and crew in the Arctic Ocean on August 21, 1872; that the vessel was abandoned to the underwriters on October 14, 1872, and on November 1, 1872, the vessel arrived at San Francisco in the possession of salvors. The plaintiff also put in evidence on which the judge directed that the following questions of fact should be submitted to the jury: "1. Whether the master, officers and crew of the Helen Snow were warranted, by necessity resulting from a peril insured against, in leaving the ship, as they did, on August 21, 1872. 2. Whether, up to the time of the written abandonments, the plaintiffs had an opportunity to resume possession of the ship, for the purpose of pursuing the voyage for which she was insured, of which they did not avail themselves."

The defendant contended that the evidence would not warrant the jury in answering these questions in favor of the plaintiff, and declined to go to the jury thereon, agreeing that if the jury would be waranted in finding these issues in favor of the plaintiff, the case should stand as if these issues had been so found. The plaintiff then asked the judge to rule that, upon

these findings, he was entitled to recover a total loss. The judge declined so to rule.

The defendant objected that, under the declaration, no evidence of a constructive total loss would be admissible. The objection was overruled, and the case was reported for the consideration of the full court. If the findings for the plaintiff, upon the two issues submitted to the jury, would entitle him to a verdict for a total loss, then judgment was to be entered for the plaintiff for a total loss, if the court should also find that there was any evidence on which the jury might properly have found upon these issues for the plaintiff; otherwise, for the defendant, or the case to stand for trial, for proof of a partial or constructive total loss, if the action could be maintained under the declaration. Annexed to the report was a copy of the evidence in the case, the nature of which appears in the opinion.

*G. Marston & C. W. Clifford*, for the plaintiff.

*T. M. Stetson*, for the defendant, cited *Falkner* v. *Ritchie*, 2 M. & S. 290; *Parsons* v. *Scott*, 2 Taunt. 363; *Naylor* v. *Taylor*, 9 B. & C. 718; *Bainbridge* v. *Neilson*, 10 East, 329; *Thornely* v. *Hebson*, 2 B. & Ald. 513; *Underwood* v. *Robertson*, 4 Camp. 138; *Anderson* v. *Wallis*, 2 M. & S. 240; *Pole* v. *Fitzgerald*, Willes, 641; *Brotherston* v. *Barber*, 5 M. & S. 418; *Everth* v. *Smith*, 2 M. & S. 278; *Hunt* v. *Royal Exchange Assurance*, 5 M. & S. 47; *Wood* v. *Lincoln Ins. Co.* 6 Mass. 479; *Greene* v. *Pacific Ins. Co.* 9 Allen, 217.

GRAY, C. J. The evidence introduced at the trial would warrant the jury in finding that the Helen Snow, being jammed fast in the ice in the Arctic Ocean, with no open water in sight, and drifting northwards with the current, her officers and crew, finding it impossible to extricate her with the utmost efforts, and nearly worn out with fatigue and want of sleep, in order to save their lives, left her and took to the boats, bringing away the guns and whaling gear; and by passing through narrow strips of water, and hauling the boats over the ice for two or three days, reached the whaling fleet, fifty or sixty miles south of where they left the vessel; that the officers and crew, with the boats, guns and whaling gear, being scattered in other vessels, and some of them having gone homewards, ten days afterwards, by a change of the wind and currents, the ice loosened

and the Helen Snow was brought out by the master and crew of another vessel, and held by them for salvage ; and that the master of the Helen Snow, although he made reasonable efforts so to do, was not able to obtain a sufficient crew or whaling craft, or to regain possession of the vessel so as to pursue the voyage on which she was employed and for which she was insured, and she was brought by the salvors to San Francisco, and, before her arrival at that port, abandoned by her owners to the underwriters.

By our law, the right to recover for a constructive total loss, or abandonment to the underwriters, depends upon the state of facts when the abandonment is made ; and the abandonment, if justified by those facts, relates back to the time of the loss.      It is true that a loss of the voyage is not necessarily a loss of the ship, within the meaning of a policy of insurance upon her. But if the ship herself is once totally lost by a peril insured against, and the master, using due diligence, is unable to regain possession of her in such a condition and under such circumstances as to enable her to pursue the voyage for which she was insured, the right to abandon and to recover for a constructive total loss still remains, without regard to the question whether at some future time, over which the master has no control, he might be able to regain possession of her on payment of salvage, and without regard to the proportion between the amount of the salvage and the value of the vessel.

In the present case, the leaving of the vessel in the ice, made necessary by a peril insured against, was a constructive total loss, and would clearly have warranted an abandonment to the underwriters at any time before she was rescued.      Her subsequent rescue by salvors, her master never having been able to resume possession of her so as to prosecute her voyage, did not cut down this total loss to a partial one, but there was still a constructive total loss of the vessel at the time of the abandonment to the underwriters.

The case is within the principle of *Greene* v. *Pacific Ins. Co.* 9 Allen, 217.      See also *Peele* v. *Merchants' Ins. Co.* 3 Mason, 27, in which the principal English cases relied on by the defendant are fully considered and distinguished.

The declaration alleges a total loss substantially in the form allowed by the practice act, as well as by the rules previously established by this court. Gen. Sts. p. 665. 24 Pick. 406. The allegation of a total loss, like the corresponding words in a policy of insurance, covers a constructive as well as an actual total loss. *Heebner* v. *Eagle Ins. Co.* 10 Gray, 131. It is not necessary, under our practice, to allege the abandonment or other facts necessary to constitute the total loss relied on.

The evidence at the trial being sufficient to prove a constructive total loss by the cause alleged in the declaration, it follows that, according to the terms of the report, there must be

*Judgment for the plaintiff for a total loss.*