Z. S. SPALDING *v.* THE ALLIANCE MARINE AND GENERAL ASSURANCE COMPANY, Limited.

Z. S. SPALDING *v.* THE SUN INSURANCE COMPANY.

IN THE MATTER OF THE HAWAIIAN STEAMER WAIMANALO.

THE ALLIANCE MARINE AND GENERAL ASSURANCE COMPANY, Limited, and THE SUN INSURANCE COMPANY *v.* Z. S. SPALDING, Mortgagee, and C. V. DUDOIT, Owner.

APPEAL FROM CIRCUIT JUDGE, FIRST CIRCUIT.

SUBMITTED OCTOBER 29, 1895.     DECIDED JANUARY 9, 1896.

JUDD, C.J., FREAR, J., AND CIRCUIT JUDGE COOPER, WHO SAT IN PLACE OF MR. JUSTICE BICKERTON, ABSENT FROM ILLNESS.

The steamer Waimanalo was stranded on a reef off a place called Keawanui, on the Island of Oahu, as the result of an accident to her machinery. She was abandoned by her master and owner to the insurers, who recovered and repaired her at a cost less than half her agreed value. The insurers tendered her to the owner and demanded the payment of their expenses upon her. This was refused. The insurance was against total loss. The master did not take adequate means to ascertain the probabilities of her becoming a total loss, nor did he make any energetic efforts to recover the vessel, as required by the terms of the policies.

Held, while admitting the law in *Bradlie v. The Maryland Ins. Co.*, 12 Pet. 398, that "the right of abandonment does not depend upon the certainty, but upon the high probability of a total loss," the fact

that the vessel was subsequently recovered and repaired is not conclusive, nor is it the "best evidence" that the abandonment was not justified. It is, however, evidence that it was practicable to recover and repair her. Under the policies it was the master's duty to ascertain as far as possible the probabilities of the case, and to use his best energies to save the vessel, and failing to do this the abandonment was not justified, and the insurers had the right to proceed to recover the vessel and repair, and have a right of action to recover their expenses. The cost of recovery and repair not exceeding half the agreed value of the vessel, the Sun Insurance Company is not liable under its policy. The Alliance Marine and General Assurance Company is not liable under its policy, the cost not exceeding the value of the vessel.

OPINION OF THE COURT BY JUDD, C.J.

The following stipulation was filed:

In each of the above entitled causes it is hereby stipulated and agreed, by and between the parties thereto, acting by and through their respective counsel:

That the libel filed by said insurance companies against said steamer may and shall be considered as the answer of said insurance companies respectively to the libels filed against them to enforce payment of their respective policies of insurance on said steamer Waimanalo in the two first above entitled suits; and said libel of said insurance companies may further be considered as a cross-bill filed in each of said two first above entitled suits.

And that said three libels and suits may be heard together as one consolidated suit; and any and all evidence, affidavits and depositions taken, or which shall be taken, and all proceedings had or which shall be had, in either of said suits, shall be available for use and considered as having been taken and had in each of said suits.

And that the libels filed against said insurance companies respectively, in said two first entitled suits, may be considered as the answer of Z. S. Spalding and of Charles V. Dudoit to the said libel of said insurance companies in the last above entitled suit.

The fact of the incorporation of the said companies and their power to contract is admitted and need not be proved herein.

Said companies are left to their proof of compliance with the law in regard to foreign corporations, and nothing in this stipulation contained shall prevent said Z. S. Spalding or C. V. Dudoit from filing any other or further plea or answer.

———

We adopt the following statement of the pleadings and evidence made by the Circuit Judge from whom this appeal comes:

The libellant in the first two libels claims as mortgagee of one C. V. Dudoit, the master and owner of the Hawaiian steamer Waimanalo, the sum of $1500.00 from the Alliance Company, and from the Sun Insurance Company $1500.00 respectively, the amounts of insurance on the Waimanalo, insured by the companies in the name of C. V. Dudoit and duly assigned to the libellant by him, the libellant claiming that the steamer Waimanalo, on August 16, 1893, was wrecked at Keawanui, Oahu, by the perils of the seas, and became a total loss. Each policy contains the clause, "loss, if any (or in case of loss), payable to Z. S. Spalding."

In their libel the insurance companies claim (Sec. 6) that Dudoit, the owner and master, at the time of the stranding proceeded with his vessel to a bar harbor and open roadstead, to-wit, Keawanui, and at divers times to other bar harbors and open roadsteads, in violation of the conditions of said policy of the Alliance Company. That (Sec. 7) on August 16, 1893, in the day time, in good weather, while Dudoit was on board and in command, said steamer was stranded by running upon the reef or shore of Oahu at or near Keawanui, Waialua, and very soon deserted and left her to her fate. That (Sec. 8) on information and belief, said stranding of the vessel was not caused by a peril of the seas or by any of the perils insured against, but that said stranding was the deliberate and willful act of said Dudoit, acting as master, and done with the purpose of wrecking her; and that the act of said master and crew in deserting and leaving the steamer to her fate was not done in good faith, but was done

in spite of the fact that at the time of such desertion said steamer was not in such peril as to be beyond the hope of rescue; and that information of such stranding being the willful act of said master came to the notice of the insurance companies after the repairs to the steamer had been contracted. That (Sec. 9) Dudoit kept a member of the crew in possession of the vessel till August 25th, and thereafter notified the agent of the companies in Honolulu of the stranding of the vessel, claiming a constructive total loss and proposing an abandonment of the vessel, and demanding payment of the policies. That (Sec. 10) the companies refused to accept such abandonment and procured a survey of the vessel as she lay at Keawanui, and annex copy of survey, and the survey recommended the floating and repair of the steamer; and a contract was made for floating and repair. That (Sec. 11) the steamer was floated, a second survey held, and the companies caused her to be repaired. That (Sec. 12) they repaired and placed the steamer in condition for use and tendered the vessel to Dudoit, and demanded payment of him or security for such sums as should on adjustment be found to be due from him; and Dudoit refused the tender and declined payment. That (Sec. 13) an adjustment was made whereby it was found that the companies were entitled to recompense for expenses of survey, floating and repairing the vessel, and that the companies were liable in $300.00 each for loss under general average under the policies. That (Sec. 14) on December 8, 1893, the adjustment was received and vessel tendered to Dudoit and demand for amount, $1687.83, due from him thereunder; and same was refused by Dudoit. That (Sec. 16) they pray for attachment of vessel and for judgment for expense of floating, repairing and caring for vessel, and other prayers.

I find that the Hawaiian steamer Waimanalo, engaged in the coasting trade and freight in the Hawaiian Islands, left the port of Honolulu, her home port, a bar harbor, on or about August 14, 1893, on her coasting trip around the Island of

Oahu, and touched at Waianae and thence to Waialua and
thence returning to an intermediary coasting landing at Kea-
wanui on August 16th. She left Waialua about 7 o'clock a. m.,
and arrived at Keawanui between 9 and 10 o'clock a. m.;
as she was coming up to her anchorage the engine stopped, and
owing to wind and current the vessel ceased going ahead and
made leeway and sternway. The stoppage was caused by a
screw of the cross head bar or gibb coming loose and dropping
off, falling between the eccentrics and jamming, stopped the
engine, or rather to cause the engineer to shut off steam and
stop the engine. Anchors were immediately let go, but failed
to hold and check the vessel, and she went ashore. Attempts
were made to get her off, but failed, and owing to the current,
wind and waves she was further carried on to the coral reef
there making out from shore, and eventually abandoned by the
master and crew, after removing the freight that was on board
for Keawanui.

Keawanui is a port of call to land and take in freight for the
island steamers such as the C. R. Bishop, Kaala, the Waimanalo
and like vessels and small sailing vessels engaged in the coasting
trade, and is open to the winds and currents. It is not an open
roadstead nor a bar harbor, but simply an anchorage place for
such coasters, and is in part protected by a coral reef, and when
anchored near the reef at the usual anchorage there is a good
depth of water and good holding ground for a vessel of the size
of the Waimanalo.

Due notice of the abandonment was given to the insurers by
the master and libellant.

The insurers got the vessel off through contractors, for the
sum of $800.00. She was brought around to Honolulu, resur-
veyed and repaired, and tendered to the insured. The tender
was refused and libels were brought by the mortgagee, Spalding,
against the two insurance companies to recover the insurance,
and a libel was brought by the insurance companies against the
vessel and owners to recover the repairs. In pursuance of a

stipulation by the parties, the vessel was sold by the marshal, and the money realized ($1000.00) was deposited in the registry of the court.

---

The Circuit Judge found a constructive total loss and a justified abandonment, gave judgment to the libellant, Spalding, for the amount of insurance contracted for and costs, and that the insurance companies were entitled to the proceeds of the sale of the vessel.

On the appeal the insurance companies abandoned the contention that the vessel was willfully wrecked and lost by the master.

On behalf of the libellant, Spalding, it is urged that the master was under the circumstances justified in abandoning the vessel, and that in determining this question the court must consider not what the actual result was, but the condition the vessel was in, the peril to which she was exposed, and the estimated probable cost of saving and repairing her; *i. e.*, whether they would exceed one-half her agreed value under the Sun policy and her total value under the Alliance policy.

The libellants, the insurance companies, contend that the insured failed to do his utmost to get the vessel off, as was his duty under the policies according to the clause to "sue, labor and travel, and use all reasonable and proper means for the security, preservation, relief and recovery of the property insured," etc., and hence the insurers were authorized to proceed to recover the vessel and repair her, and, the result showing that the damage was less than one-half the agreed value, they were justified in tendering the vessel to the insured, and on refusal to accept her and pay the charges they can recover the same.

The insurers claim that the cost of weighing the vessel, bringing her into the port of Honolulu and repairing her amounted to $2237.83, and deducting the one-third off "new for old," as stipulated in the policy, the amount is less than 50 per cent. of the agreed value of the vessel ($4500.00), and so the insurers,

the Sun Company, are not liable as for a total loss, nor, *a fortiori*, the Alliance Company.

Both insurance companies insure for total and not partial loss. Under the Sun policy the cost of repair must be three-quarters of the agreed value, in this case $3375, in order to render the company liable—unless we find that there was an actual total loss. Under the Alliance policy the cost of recovery and repair must exceed the value of the vessel in the policy; *i. e.*, $4500, unless there was an actual total loss.

We agree with the general proposition urged by counsel for the insured, that the act of a master of a vessel in abandoning her must be judged by the probabilities of total loss and complete destruction of the vessel as they existed at the moment of abandonment. The doctrine is formulated by Chancellor Kent as follows: "The right of abandonment does not depend upon the certainty but upon the high probability of a total loss, either of the property or voyage, or both. The insured is to act, not upon certainties, but upon probabilities; and if the facts present a case of extreme hazard, and of probable expense exceeding half the value of the ship, the insured may abandon, though it should happen that she was afterwards recovered at less expense."

This expression of the law was cited approvingly by the Supreme Court of the United States in *Bradlie v. The Maryland Insurance Co.*, 12 Peters 398, and has been followed, we believe, in the Admiralty Courts without question. See *Snow v. Union Ins. Co.*, 119 Mass. 592; *Wallace v. Thames & Mersey Ins. Co.*, 22 Fed. Rep. 66; *Orient Ins. Co. v. Adams*, 123 U. S. 67. We do not consider that the fact that the vessel in this case was recovered and repaired is conclusive, nor is it the "best evidence" that it was practicable to recover and repair it. *Orient Ins. Co. v. Adams*, Id. 76. On the other hand, the bare fact that the master thought that his vessel was in extreme peril, and that the probable cost of her recovery and repair would exceed half her value under the Sun policy, would not justify the abandonment. The evidence shows that no adequate means

were taken to ascertain the probabilities. The Waimanalo had been driven by the surf over the sand spit, and lay on her bilge, and her position seemed critical, but no soundings were taken by the master, of the water alongside of her; no careful examination of the neighboring channels and reefs, and no plan matured by him as to how she could be recovered and brought into deep water, and no determined effort made for her recovery. He called to his counsel Capt. Smythe of the "Waialeale," and his estimate that the vessel should be abandoned is the only disinterested opinion that we have. Capt. Smythe, however, says that he stood on the shore some hundreds of yards distant from the Waimanalo, that no soundings had been given him by Capt. Dudoit or taken by him, and that if he had been told that there was eight and a half feet of water under her stern it would have made a difference in his judgment that the vessel should be abandoned. He made no estimate of the probable cost of repairs. As above stated, in a few days the vessel was righted by contractors of the insurers, her hole patched up, pulled over the reef into deep water and brought to Honolulu and repaired for less than half her agreed value. This, though not the "best evidence," is evidence that the abandonment was hastily and improvidently decided upon. This is not the case where changed circumstances after an abandonment made in good faith make it practicable to recover and repair the vessel for a less sum than would make the insurers liable. Here the circumstances, so far as we can judge, had not changed.

From a careful review of the very voluminous evidence taken we are of opinion that the abandonment was not justified, and that no sufficient examination was made by the master upon which to base his judgment, and no energetic means taken to recover his vessel. The insured were bound to do all in their power to save the insurers from any payment under their policies. The insurers did, in recovering the vessel, what the insured should have done, and were justified in refusing to accept the abandonment, and as they were not liable (the Sun Company) for a loss not exceeding half of the agreed value, and the Alliance Company for a loss not exceeding the value, they are en-

titled to recover of the insured the amount of the expenses incurred by them in saving and repairing the vessel. The principles sustaining this right of action are fully discussed and settled in *Commonwealth Ins. Co. v. Chase*, 20 Pick. 142.

The decree appealed from is reversed and judgment ordered for the insurers, the amount of which is referred to the Clerk of the court for computation and report. The libels of the insured against the insurance companies are dismissed.

*F. M. Hatch*, for the insured.

*L. A. Thurston* and *Paul Neumann*, for the insurers.