SUSAN PARKER, Plaintiff-Appellee, *v.* SHEILA NAKAOKA, Defendant-Appellant

NO. 9542

(CIVIL NO. 4501)

JULY 22, 1986

LUM, C.J., NAKAMURA, PADGETT, HAYASHI AND WAKATSUKI, JJ

OPINION OF THE COURT BY WAKATSUKI, J.

Plaintiff Susan Parker (Appellee), a pedestrian, was struck by a car driven by defendant Sheila Nakaoka (Appellant). By special verdict, a trial jury found the total amount of damages suffered by Parker as a proximate result of the accident to be $1,174.10[1] as special damages and $66,500 as general damages. The jury apportioned the negligence attributable to Nakaoka as eighty-two per cent and to Parker as eighteen per cent. Nakaoka appeals.

The dispositive issues in this appeal are: whether the trial judge, as a matter of law, or whether the jury, should have determined whether Appellee's injury met the threshold requirement for tort liability pursuant to Hawaii Revised Statutes (HRS) § 294-6(a)(1);[2] and whether Appellant's proposed special verdict interrogatory number 5[3] should have been given.

I.

Prior to the enactment of the HRS Chapter 294, commonly referred to as the Hawaii No-Fault Law, the Legislative Auditor of the State of

---

[1] At the time of the accident, the medical-rehabilitation expense threshold was $1,500.

[2] The pertinent part of HRS § 294-6 reads:
Abolition of tort liability. (a) Tort liability of the owner, operator, or user of an insured motor vehicle, or the operator or user of an uninsured motor vehicle who operates or uses such vehicle without reason to believe it to be an uninsured motor vehicle, with respect to accidental harm arising from motor vehicle accidents occurring in this State, is abolished, except as to the following persons or their personal representatives, or legal guardians, and in the following circumstances:
(1) Death occurs to such person in such a motor vehicle accident; or injury occurs to such person which consists, in whole or in part, in a significant permanent loss of use of a part or function of the body; or injury occurs to such person which consists of a permanent and serious disfigurement which results in subjection of the injured person to mental or emotional suffering.

[3] 5. In the accident of February 15, 1978, did Plaintiff SUSAN PARKER sustain injury which constituted a significant permanent loss of use of a part or function of the body? Answer: Yes-No.

Hawaii, in his study of Hawaii's motor vehicle liability insurance system, identified some of the notable deficiencies of the insurance system as: (1) relatively minor losses were overcompensated, serious injuries were undercompensated, and many automobile accident victims were not compensated at all; (2) high administrative costs and legal expenses concomitant with the adversary procedure meant that only a fraction of the benefits were returned to the victims; (3) long delays in receiving benefits due to the machinery of the fault-finding process; (4) duplication among the liability, medical, wage loss, and property damage compensation systems; and (5) the high and continually rising cost of automobile liability insurance. Legislative Auditor, *A Study of Hawaii's Motor Vehicle Insurance Program,* 5 (1972). *See also* Act 245, § 1, 1983 Haw. Sess. Laws 518-519.

The Legislature, recognizing the deficiencies, enacted the Hawaii No-Fault Law to provide motor vehicle accident victims assured, adequate and prompt reparation for certain economic losses without regard to fault. The clear objectives of the law are to: (1) institute insurance reform in order to (a) expedite the settling of all claims, (b) create a system of reparations for injuries and loss arising from motor vehicle accidents, (c) compensate these damages without regard to fault, and (d) modify tort liability for these accidents; and (2) to reduce the cost of motor vehicle insurance by establishing a uniform system of motor vehicle insurance. House Joint Stand. Comm. Rep. No. 187, reprinted in 1973 House Journal at 836. *See also* Act 245, § 1, 1983 Haw. Sess. Laws 518, 519; Sen. Stand. Comm. Rep. No. 402, reprinted in 1973 Senate Journal at 817; Conf. Comm. Rep. No. 13, reprinted in 1973 House Journal at 1219; Conf. Comm. Rep. No. 4, reprinted in 1973 Senate Journal at 635.

In order to accomplish the objectives of the no-fault law, every Hawaii motorist is required to purchase no-fault insurance, otherwise, he is unable to legally operate a motor vehicle in the state.[4] Under the no-fault insurance policy, an accident victim is assured prompt payment of basic wage losses and medical-rehabilitation expenses without regard to fault[5] and generally without the necessity of a prolonged litigation.

---

[4]HRS § 294-8.

[5]HRS §§ 294-2(10), 294-4.

The law does not, however, assure payment for all economic losses, nor for non-economic losses.[6] An accident victim may suffer significant losses other than those losses which the law guarantees payment without regard to fault. The traditional tort remedy was left intact for economic losses exceeding those amounts assured of payment under the law, but for non-economic losses which the law assures no definite payment the tort remedy was not left wholly intact.[7]

Under the Hawaii No-Fault Law an accident victim may not maintain the traditional negligence tort action against the alleged wrongdoer except as to certain "serious" instances specified under HRS § 294-6. *See* Act 245, § 1, 1983 Haw. Sess. Laws 518, 519; Sen. Stand. Comm. Rep. No. 402, reprinted in 1973 Senate Journal at 817, 818; 1973 House Journal 395-419, 697-703.

The legislature clearly intended the no-fault law to provide an economically viable motor vehicle insurance system for the public. This objective could not be accomplished if minor injuries are overcompensated, or if non-economic losses could always be litigated under the no-fault law. Further, the objective of reducing motor vehicle accident suits will be illusory if every case is subject to litigation for non-economic loss based on the traditional tort liability. Consequently, nothing will be gained by providing the benefits for economic loss without regard to fault. The obvious trade-off involved in a no-fault law is well stated in 7 Am. Jur. 2d *Automobile Insurance,* § 340 (1980):

> It has been said of one such plan that the practical effect of the adoption of personal injury protection insurance is to afford the citizen the security of prompt and certain recovery to a fixed amount of the most salient elements of his out-of-pocket expenses . . . . In return for this he surrenders the possibly minimal damages for pain and suffering recoverable in cases not marked by serious economic loss or objective indicia of grave injury, and also surrenders the outside chance that through a generous settlement or a liberal award by a judge or jury in such a case he may be able to reap a monetary windfall out of his misfortune. (Footnotes omitted.)

Therefore, the vital and necessary function of the threshold require-

---

[6]HRS §§ 294-2(10), 294-6.

[7]HRS § 294-6.

ment as a condition to maintain a traditional negligence action for non-economic loss is in maintaining an economically viable no-fault insurance system for the public.

II.

The parties concede that the only threshold question in this appeal is whether Appellee suffered an injury which consists, in whole or in part, in a significant permanent loss of use of a part or function of her body. *See* note 1, *supra.* If Appellee did not suffer such an injury, Appellee could not maintain her negligence action.

Appellee argues that the threshold requirement is an affirmative defense which should have been pleaded and proven by the Appellant. We disagree.

Although the no-fault law is silent on this point, the scheme and objectives of the law suggest that meeting the threshold requirement is an essential condition and element of Appellee's cause of action. *Murray v. Walter,* 269 N.W.2d 47 (Minn. 1978); *Fitzgerald v. Wright,* 155 N.J. Super. 494, 382 A.2d 1162 (1978). Appellee is the one who has personal knowledge and information as to whether the threshold condition is met. Therefore, it stands to reason that in order to achieve fairness and efficiency in implementing the objectives of the law, Appellee should have the burden of proving that "the claim is one that has escaped the general abolition of tort liability decreed by HRS § 294-6." *McAulton v. Goldstrin,* 66 Haw. 14, 18, 656 P.2d 96, 98 (1982) (Nakamura, J., dissenting). *See also Fitzgerald v. Wright,* 155 N.J. Super. at 499, 382 A.2d at 1165.

Appellee argues that the trial judge made a finding that the threshold requirement had been met by Appellee by pointing to the trial judge's statement:

Well, I'm going to find that allegations of permanent damages make this case one appropriate for a jury to decide.

We disagree. Allegations alone are not sufficient to meet the threshold requirements. Appellee must carry the burden of proving that her injury meets or exceeds the threshold requirement in question.

III.

Hawaii's no-fault law does not give any guidance as to whether the

judge, as a matter of law, should determine if the threshold requirement had been met, or whether the jury should determine that question. We hold that whether Appellee met the threshold requirement is for the jury to determine inasmuch as the facts relating to Appellee's injury are in dispute and reasonable minds could differ on whether Appellee sustained an injury which consists, in whole or in part, in a significant permanent loss of use of a part or function of her body. *See Murray v. Walter, supra; Fleet Transport Co. v. Holland,* 166 Ga. App. 337, 304 S.E.2d 76 (1983); *Falcone v. Branker,* 135 N.J. Super. 137, 342 A.2d 875 (1975).

This is not to say, however, that a trial judge is precluded from determining, as a matter of law, whether a plaintiff met the threshold requirement. When the evidence is so clear that reasonable minds could only come to one conclusion, it is not error for the trial judge to remove the threshold question from the jury and to determine that question as a matter of law. *Falcone v. Branker, supra; Licari v. Elliott,* 57 N.Y.2d 230, 455 N.Y.S.2d 570, 441 N.E.2d 1088 (1982).

## IV

As to Appellant's proposed special verdict interrogatory number 5, we hold that the trial court erred in refusing to submit the proposed interrogatory to the jury in view of our holding that the threshold requirement is a necessary condition and element of Appellee's cause of action. It is essential that the triers of fact make a finding that Appellee did in fact sustain an injury which consists, in whole or in part, in a significant permanent loss of use of a part or function of her body in order for Appellee to maintain her negligence tort claim against Appellant.

Should Appellant's proposed interrogatory to the jury be accompanied by instructions defining "in a significant permanent loss of use of a part or function of the body" pursuant to HRS § 294-6? Rule 49(a), Hawaii Rules of Civil Procedure (HRCP), which authorizes the trial court to submit to the jury written questions susceptible of brief answer, requires that the court give to the jury such explanation and instruction concerning the matter thus submitted *as may be necessary* to enable the jury to make its findings. *See also Tights, Inc. v. Acme-McCrary Corp.,* 541 F.2d 1047, 1060-1061 (4th Cir. 1976), *cert. denied,* 429 U.S. 980 (1976); *Concord Co. v. Willcuts,* 125 F.2d 584 (8th Cir. 1942).

V

Appellee contends that Appellant, by failing to proffer an instruction on the threshold requirement, forfeited her right to have the threshold question submitted to the jury.

If Appellee believed that elucidation on the interrogatory submitted was required, Appellee's counsel should have requested such a jury instruction. Rule 51, HRCP; *Sullivan v. Minneapolis, St. P. & S. S. M. Ry. Co.,* 167 N.W. 311 (Wis. 1918). *See also Chung v. Kaonohi Center Co.,* 62 Haw. 594, 618 P.2d 283 (1980). We hold that Appellant's failure to submit an explanatory instruction with the proposed special verdict interrogatory does not operate as a waiver of her right to have the jury determine the threshold question.

All other contentions raised in this appeal are without merit.

Judgment is vacated and this case is remanded for a new trial.

*Robert P. Richards (Douglas H. Knowlton* with him on the briefs; *Davis, Playdon, Reid and Richards*) for defendant-appellant.

*James Krueger* on the brief for plaintiff-appellee.