MARVIN LEE, Plaintiff-Appellant, *v.* INSURANCE COMPANY OF NORTH AMERICA, a corporation, Defendant-Appellee

NO. 12286

(CIVIL NO. 85-1964)

JULY 18, 1988

BURNS, C.J., HEEN AND TANAKA, JJ.

OPINION OF THE COURT BY HEEN, J.

The question presented in this appeal is whether Plaintiff-Appellant Marvin Lee (Plaintiff) is entitled to stack the uninsured motorist benefits under an automobile insurance policy issued by Defendant-Appellee Insurance Company of North America (Defendant) and covering approximately 1,106 motor vehicles, including Plaintiff's. We answer no and affirm the lower court's summary judgment in favor of Defendant on the issue of liability.

On October 12, 1980, Plaintiff was a Honolulu police officer assigned as a motor patrolman who used his privately owned but City subsidized automobile to perform his duties.[1] Plaintiff's automobile, as well as other motor patrolmen's automobiles, was in-

---

[1] The practice of using the motor patrolman's private vehicle in the performance of his governmental functions is unique to Hawaii.

sured under one "Business Auto Policy."[2] Plaintiff and the other motor patrolmen,[3] the City and County of Honolulu (City), and the Honolulu Police Department were named insureds. The policy provided, *inter alia*, uninsured motorist coverage in the amount of $25,000 per vehicle.[4] The insurance premium was paid by the City, and included a charge of $3.00 per vehicle for the uninsured motorist coverage. On October 12, 1980, Plaintiff was in his automobile when it was struck from behind by an uninsured motorist. Plaintiff was injured and Defendant paid him the policy limit of $25,000 on the uninsured motorist coverage. However, Defendant refused to allow him to recover more by "stacking" the coverage for the other automobiles covered under the policy.

Plaintiff filed the action below asserting his right to stack. The lower court granted Defendant's motion to dismiss or in the alternative for summary judgment,[5] and Plaintiff appealed.

I.

Stacking refers to an insured's attempt to recover damages by aggregating or cumulating similar coverages provided under more than one automobile insurance policy or under one policy covering more than one automobile. *Gamboa v. Allstate Ins. Co.,* 104 N.M. 756, 726 P.2d 1386 (1986). In the area of uninsured motorist coverage our supreme court has allowed stacking in both instances. *E.g., Estate of Calibuso v. Pacific Ins. Co., Ltd.,* 62 Haw. 424, 616 P.2d 1357 (1980) (stacking allowed under multi-vehicle policy); *American Ins. Co. v. Takahashi,* 59 Haw. 59, 575 P.2d 881 (1978) (insured

---

[2] Such policies, covering a number of vehicles owned by a business or government entity, are usually called "fleet" policies. *See Annot.* 25 A.L.R.4th 896, 898 n.1 (1983).

[3] The motor patrolmen were named on a list attached to the policy.

[4] Under Hawaii Revised Statutes § 431-448 (1985) every automobile insurance provider in the state is required to offer, in addition to all other automobile insurance coverage, protection against injury caused by an uninsured motorist. The insurance purchaser may choose either to purchase the coverage or not.

[5] Since the lower court considered matters outside the pleadings, we deem the court to have granted the alternative motion for summary judgment. *See* Rule 12(b), Hawaii Rules of Civil Procedure (1980); *Towse v. State,* 64 Haw. 624, 647 P.2d 696 (1982).

allowed to cumulate the coverage under one policy for their two automobiles even though injured while passengers in a third independently owned and insured automobile); *Allstate Ins. Co. v. Morgan,* 59 Haw. 44, 575 P.2d 477 (1978) (injured driver allowed to stack coverage for three automobiles owned by her father and covered under one policy); *Walton v. State Farm Mut. Auto. Ins. Co.,* 55 Haw. 326, 518 P.2d 1399 (1974) (stacking allowed of coverage afforded by policy covering automobile in which plaintiff was a passenger and by his own policy).

Plaintiff argues that the policy at hand should be accorded the same treatment as any other multi-vehicle policy and he should be allowed to stack the uninsured motorist coverages for all 1,106 covered vehicles. We disagree.

## II.

### A.

· The cases are split on the question of whether stacking of uninsured motorist coverage is allowed under an automobile fleet policy. Where stacking has been allowed under a fleet policy, it has generally been because the injured person was a named insured under the policy, or considered so by the court. *See, e.g., Marchese v. Aetna Cas. & Sur. Co.,* 284 Pa. Super. 579, 426 A.2d 646 (1981) (policy designated employee-claimant as one who would use "dealer" plates and drive employer's automobile); and *American States Ins. Co. v. Milton,* 89 Wash. 2d 501, 573 P.2d 367 (1978) (daughter of named insured).

### B.

Those cases which have denied stacking of uninsured motorist coverage consider three factors as determinative: (1) whether the claimant was named or designated as an insured[6] in the policy or

---

[6] Uninsured motorist stacking cases have generally included as named insureds members of the insurance purchaser's family residing in the purchaser's household. *See Allstate Ins. Co. v. Morgan,* 59 Haw. 44, 575 P.2d 477 (1978); *Tucker v. Government Employees Ins. Co.,* 288 So.2d 238 (Fla. 1973).

was an insured only because he was a passenger in a covered vehicle (occupancy insured); (2) whether the claimant paid the premium; and (3) whether the insured can be said to have reasonably expected to receive coverage for each vehicle included under the policy.

Thus, in *Cunningham v. Ins. Co. of North America*, 213 Va. 72, 189 S.E.2d 832 (1972), the plaintiff's decedent was killed while a passenger in one of his employer's 4,368 automobiles covered under one fleet policy for uninsured motorist risk. The Virginia court, citing a Virginia statute defining the term "insured," distinguished between a named insured and an insured and held that since the deceased employee was not a named insured his estate could not stack the coverages. The court noted, additionally, that the employer bought the policy and paid the premium to provide the minimum statutory protection for itself as the named insured and for the other insureds; and that the employer did not intend to provide multiple coverage to every permitted user of its automobiles.

In *Linderer v. Royal Globe Ins. Co.*, 597 S.W.2d 656 (Mo. App. 1980), the court would not permit an employee to stack the uninsured motorist coverages applicable to 1,420 motor vehicles under the employer's fleet policy because he was not the named insured under the policy, did not pay the premium for the coverage, and did not have a reasonable expectation of coverage. The court stated that one who applies for and obtains a policy covering two automobiles would expect to be covered for both automobiles, but that it was not "credible" that either the employer or the employee would "reasonably expect" the coverage on the employer's automobile which the employee was occupying to be the aggregate of the coverage on every car in the employer's fleet.

The *Linderer* court pointed out the practical problem that stacking of coverage in a fleet policy would present:

> Therein lies the problem. If stacking were required for fleet policies there would be $14,200,000 of coverage for each Union Electric vehicle and the total exposure for the entire fleet of 1,420 vehicles would be 1,420 times $14,200,000 or $20,164,000,000, obviously an argument to absurdity, but the actual exposure amounts to millions of dollars.

*Id.* at 661.

Stacking was also denied in *Lambert v. Liberty Mutual Ins. Co.*, 331 So.2d 260 (Ala. 1976), where the court said that stacking is an application of that state's rule that " 'the insured is entitled to the protection which he may *reasonably expect* from the terms of the policy he purchases.' " *Id.* at 263 (quoting *Aetna Cas. & Sur. Co. v. Chapman*, 240 Ala. 599, 602, 200 So. 425, 427 (1941) (emphasis in original) ). The Alabama court pointed out that the named insured in a multi-vehicle policy has paid additional premiums for which he receives the additional coverage and a contract benefit. Consequently, the named insured has a reasonable expectation of receiving for himself the additional coverage. The plaintiff employee in that case, who was not a named insured but was merely an occupancy insured in one of the employer's automobiles, was denied stacking because it was not reasonable to expect that the minuscule premium paid for each vehicle would provide cumulative coverage to him.

The reasonable expectation principle was also cited in *Thompson v. Grange Ins. Ass'n*, 34 Wash. App. 151, 660 P.2d 307 (1983), and *Continental Cas. Co. v. Darch*, 27 Wash. App. 726, 620 P.2d 1005 (1980).

Our supreme court has declined to make a distinction between a named insured and an additional insured in an uninsured motorist stacking case, *Calibuso v. Pacific Ins. Co., Ltd., supra,* and it has applied the principle of reasonable expectation to uninsured motorist coverage.[7] *Allstate Ins. Co. v. Morgan, supra.* And in the field of comprehensive general liability insurance, the supreme court has stated that insurance policies are to be construed in accordance with the reasonable expectation of a layperson. *Sturla, Inc. v. Fireman's Fund Ins. Co.*, 67 Haw. 203, 684 P.2d 960 (1984). We apply the reasonable expectation principle in this case.

---

[7] The principle of reasonable expectation is stated as:

The objectively reasonable expectations of applicants and intended beneficiaries regarding the terms of insurance contracts will be honored even though painstaking study of the policy provisions would have negated those expectations.

R. Keeton, Basic Text on Insurance Law § 6.3(a), at 351 (1971).

## C.

Here, the premium for the policy was paid by the City,[8] and Plaintiff is a named insured only because of a combination of his work assignment and the City's policy of having its motor patrol officers use their own cars in the performance of their duties, an assignment which is subject to constant revision as police officers' duty assignments are changed.

We deem it unreasonable under these circumstances for either the City or Plaintiff to expect that the $3.00 charge for uninsured motorist coverage for each vehicle would afford Plaintiff such coverage for all of the vehicles included in the policy. As the District Court of Appeal of Florida said:

> We can easily envision a situation in which stacking of coverage for an occupant would give the insurance company in return for a minimal premium a potential liability running into millions of dollars, and we do not think *Tucker* was ever intended to lead to that result.

*Travelers Ins. Co. v. Pac,* 337 So.2d 397, 399 (Fla. Dist. Ct. App. 1976). Under Plaintiff's theory, the premium paid by the City on his vehicle would give him a total coverage of $27,650,000. On that basis the insurer's total possible exposure on all the insured vehicles would be $30,580,900,000. Stating the problem in that manner points up the gross absurdity of the result sought by Plaintiff.

Plaintiff's reliance on *Allstate Ins. Co. v. Morgan, supra,* does not assist him. Although in *Morgan* the insured who was allowed to stack did not pay the premium, it was not unreasonable for her and her father, who did pay the premium, to expect that she would benefit from the double coverage.

Affirmed.

*Norman K. K. Lau (Radius & Lau,* of counsel) for plaintiff-appellant.

*Paul T. Yamamura (Sidney K. Ayabe* with him on the brief; *Libkuman, Ventura, Ayabe & Hughes,* of counsel) for defendant-appellee.

---

[8] It might be argued that the cost of uninsured motorist coverage is really part of Plaintiff's compensation and he is really the payor. Nevertheless, in our view, it would still be unreasonable for Plaintiff to expect stacked coverage for the minuscule premium.