**NATIONAL UNION FIRE INSURANCE COMPANY, a Pennsylvania Corporation, Plaintiff,**

v.

**Lucille M. VILLANUEVA, in her capacity as the Special Administratrix of the Estate of David William Villanueva, Deceased, Defendant.**

**Lucille M. VILLANUEVA, individually and in her capacity as Special Administratrix of the Estate of David William Villanueva, Deceased, David Villanueva, Bennett Craig Villanueva, individually and as guardian ad litem for Bennett Kaiponohea Kapono Villanueva; minor; David B. Villanueva; Allison Villanueva, individually and as guardian ad litem for Shellsea Villanueva and David B. Villanueva, Jr., minors, Counterclaim–Plaintiffs,**

v.

**NATIONAL UNION FIRE INSURANCE COMPANY, a Pennsylvania Corporation, Counterclaim–Defendant.**

**Civ. No. 88–00522 DAE.**

United States District Court, D. Hawaii.

July 3, 1989.

Carleton B. Reid and J. Thomas Weber, Davis, Reid & Richards, Honolulu, Hawaii, for plaintiff.

Susan Oki Mollway and Patricia J. McHenry, Cades Schutte Fleming & Wright, Honolulu, Hawaii, for defendant.

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF AND COUNTERCLAIM DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; AND DENYING DEFENDANT AND COUNTERCLAIM PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

DAVID A. EZRA, District Judge.

This is an action for declaratory relief brought by an insurer against its insured arising out of a fatal motor vehicle accident involving a sixteen year-old cyclist and an uninsured automobile. Plaintiff National Union Fire Insurance Company ("NUFIC") requests the court to hold that it is not obligated to provide uninsured motorist coverage to the estate of David William Villanueva ("David William") under a policy issued by it to David B. and Allison Villanueva ("David B. and Allison"). The defendants and counterclaimants (referred to collectively as "the Villanuevas") seek recovery of stacked no-fault, underinsured motorist, and uninsured motorist benefits under the David B. and Allison policy as well as the policy issued by NUFIC to David William's parents, David and Lucille Villanueva ("David and Lucille"). In addition, the defendant and counterclaimants request this court to find there exists separate limits of liability under the respective policies for each family member for the wrongful death of David William and for emotional distress.

This matter is before the court pursuant to Fed.R.Civ.P. 56 on plaintiff and defendants' cross-motions for summary judgment with respect to defendants' counterclaims asserted in this action and on plaintiff's motion for summary judgment as to its claim for declaratory relief.

I. *Background*

On January 9, 1988, David William, aged 16, died as a result of injuries sustained when he was struck by an uninsured motor vehicle. On the date of the accident, there was in force a valid and effective automobile insurance policy issued by NUFIC to David and Lucille, David William's adoptive parents (and natural grandparents), covering three automobiles. The limits of liability of the David and Lucille policy include no-fault, uninsured motorist and underinsured motorist coverage in the amounts of $15,000, $35,000 and $35,000, respectively.

There was also in force a separate automobile insurance policy issued by NUFIC to David B. and Allison covering one automobile. (David B. is the natural son of David and Lucille.) The limits of liability provided by the David B. and Allison policy were identical to those in the David and Lucille policy.

David William lived with David and Lucille at 86–113 Puhawai Road in Waianae. He received all of his financial support from David and Lucille and they claimed him as a dependent for tax purposes. The property at 86–113 Puhawai Road is a one acre tract owned by David and Lucille on which two houses, connected by a single covered patio, are located. Each house is a self-contained residential unit having its own telephone, kitchen, washing machine, T.V. and electric meter.

Prior to the accident, David and Lucille, with David William, lived in one of the houses, while David B. and Allison and their children lived in the other. David and Lucille paid for the upkeep and maintained property and casualty insurance on both houses. David B., however, did general yard maintenance on the entire property. The families were frequently in each other's house, often ate meals and entertained together, and used each other's motor vehicles. However, each family separately paid the utilities charged to its respective residence, washed its own laundry, and purchased its own groceries.

Upon David William's death, NUFIC paid his estate $15,000 in no-fault benefits and stacked uninsured motorist benefits in the total amount of $105,000 (3 insured motor vehicles × $35,000) pursuant to the David and Lucille policy. NUFIC has paid no underinsured motorist benefits under the David and Lucille policy and has not paid any benefits pursuant to the David B. and Allison policy.

## II. *Decision of the Court*

### A. *Summary Judgment Standard*

Fed.R.Civ.P. 56(c) provides for summary judgment when:

... the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The movant bears the initial burden of "identifying ... those portions of the material on file that it believes demonstrates the absence of any genuine issue of material fact." *T.W. Electrical Service, Inc. v. Pacific Electrical Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir.1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986)). If the movant has met its burden, then "the non-moving party must show that there are 'genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be in favor of either party.'" *California Arch. Bldg. Prod. v. Franciscan Ceramics*, 818 F.2d 1466, 1468 (9th Cir.1987) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986)), *cert. denied*, —— U.S. ——, 108 S.Ct. 698, 699, 98 L.Ed.2d 650 (1988). When the "evidence" produced by each side conflicts, "the judge must assume the truth of the evidence set forth by the opposing party with respect to that fact." Inferences from the facts, disputed and undisputed alike, must be drawn in the light most favorable to the opposing party. *T.W. Electrical*, 809 F.2d at 631. These genuine factual issues must be supported by significant probative evidence.

*Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 282 (9th Cir.1979). Hence, the nonmoving party may not stand on its pleadings or merely assert it will controvert the movant's evidence at trial. *See T.W. Electrical*, 809 F.2d at 630. Simple disagreement about a material issue of fact, therefore, no longer precludes the use of summary judgment. *California Arch. Bldg. Prod.*, 808 F.2d at 1466.

### B. *Stacking of No–Fault, Uninsured and Underinsured Motorist Benefits*

#### 1. *Basic No–Fault Insurance Coverage*

■ The Villanuevas claim that stacking of basic no-fault benefits is permissible under Hawaii's statutory scheme. The Hawaii Intermediate Court of Appeals, however, has squarely addressed this issue and reached the opposite conclusion. *Rana v. Bishop Insurance of Hawaii, Inc.*, 6 Haw. App. 1, 713 P.2d 1363 (1985).

HRS §§ [sic] 294–2(10) states that no-fault benefits shall be subject to "an aggregate limit of $15,000 per person or his survivor," and HRS § 294–3(c), titled "maximum limit," provides that the *"total* no-fault benefits *payable per person"* in one accident shall be $15,000, "regardless of the *number of motor vehicles involved or policies applicable."* In our opinion, the language of those sections indicates a clear legislative intent to prohibit stacking of no-fault basic coverages. (Emphasis added.)

*Rana*, 6 Haw.App. at 6–7, 713 P.2d at 1368. Construing the applicable statutes, the court found that the legislature had struck a balance between the no-fault law's objectives of providing for " 'adequate and equitable reparation for those injured' " and compulsory insurance coverage " 'at a cost within the reach of every licensed driver.' " 6 Haw.App. at 8, 713 P.2d at 1368–69. The court found Hawaii's no-fault law to be plain and unambiguous and held the express terms of the statute prohibits the stacking of basic no-fault insurance policies and coverages. *Rana*, 6 Haw.App. at 11, 713 P.2d at 1367.

The Villanuevas nevertheless attempt to distinguish *Rana* by arguing that its holding only precludes stacking basic no-fault coverages under a "business auto policy" as opposed to a conventional individual auto policy such as the policy at issue here.[1] The Villanuevas assert that unlike the business auto policy in *Rana,* it is reasonable for the insured to expect that the premiums paid for basic no-fault coverage for each of the vehicles under a conventional individual auto policy would entitle him or her to recover stacked basic no-fault benefits.

In this regard, the Villanuevas cite *Lee v. Insurance Company of North America,* —— Haw.App. ——, 762 P.2d 809, *aff'd,* —— Haw. ——, 763 P.2d 567 (1988). In *Lee* the Hawaii Intermediate Court of Appeals applied what is termed the "reasonable expectation principle" to deny stacking of uninsured motorist coverages to an injured police officer under a business auto policy. The policy in question insured 1,106 motor vehicles on which a $3.00 per vehicle premium had been paid by the City and County of Honolulu ("City") for uninsured motorist coverage. Specifically, the court held that, although stacking uninsured motorist policies and coverages is generally permitted,[2] it was unreasonable "for either the City or [the injured officer] to expect that the $3.00 charge for uninsured motorist coverage for each vehicle would afford [the injured officer] such coverage for all of the vehicles included in the policy." *Lee,* —— Haw.App. at ——, 762 P.2d at 813.

The Villanuevas maintain that the principles enumerated in *Lee* require that the holding in *Rana* be strictly limited to its facts. They fail to note, however, that the Hawaii State Supreme Court in *Lee,* while affirming the intermediate court of appeals' conclusion, declined to generally adopt this "reasonable expectation principle" and narrowly held:

> [T]he public policy considerations underlying the principle of stacking of uninsured motorist coverage do not warrant extending that principle to a "Business Auto Policy" covering 1,106 vehicles separately owned by the motor patrolmen of the Honolulu Police Department. *Our holding is a narrow one applying to the unique factual pattern presented in this instant case.*

—— Haw. at ——, 763 P.2d at 570 (emphasis added).

Moreover, in *Rana* the court explicitly premised its decision on what it deemed to be the clear intent of the legislature to prohibit the stacking of *basic no-fault policies* and coverages, rather than what might be construed as the reasonable expectation of the policyholder. Further, the instant case, like *Rana,* deals with *basic no-fault* insurance, and not uninsured motorist coverage which was at issue in *Lee.*

Therefore, while the Villanueva's position is artfully crafted, it is not persuasive in light of the unambiguous wording of the applicable statutes and holdings by the Hawaii Supreme Court and Hawaii Intermediate Court of Appeals in *Lee* and *Rana,* respectively. Therefore, NUFIC is entitled to summary judgment on this issue as a matter of law and is thus not obligated to pay any additional basic no-fault benefits under either of the policies in question.[3]

---

1. In *Rana,* the owner and operator of a taxicab business was injured in an accident while operating one of the business' seven vehicles. At the time of the accident all seven vehicles were covered by a valid and effective "business auto policy". Rana sought to stack the no-fault coverages and limits for all seven vehicles under the one business auto policy. *See Rana,* 6 Haw. App. at 3, 713 P.2d at 1365–66.

2. *See Estate of Calibuso v. Pacific Ins. Co.,* 62 Haw 424, 616 P.2d 1357 (1980); *American Ins. Co. v. Takahashi,* 59 Haw. 59, 575 P.2d 881 (1978); *Allstate Ins. Co. v. Morgan,* 59 Haw. 44, 575 P.2d 477 (1978); *Walton v. State Farm Mutual Auto. Ins. Co.,* 55 Haw. 326, 518 P.2d 1399 (1974).

3. The Villanuevas also rely on *In re Claim of Maldonado,* 5 Haw.App. 185, 192, 683 P.2d 394, 399–400, *rev'd,* 67 Haw. 347, 687 P.2d 1 (1984), wherein the Hawaii Intermediate Court of Appeals cited *Yamaguchi v. State Farm Mutual Automobile Insurance Co.,* 706 F.2d 940 (9th Cir.1983) and *Mizoguchi v. State Farm Mutual Automobile Insurance Co.,* 66 Haw. 373, 663 P.2d 1071 (1983), in support of its statement that "'[s]tacking' of no-fault policies is permitted under the No-Fault Act." The court in *Rana,* however, deemed its use of the word "stacking" in *Maldonado,* "loose and indiscriminate" and

Plaintiff's motion for summary judgment on this issue is GRANTED. Defendant and counterclaim plaintiffs' motion for partial summary judgment on this issue is DENIED.

### 2. *Underinsured Motorist Coverage*

■ Initially, it must be determined whether underinsurance coverage is available to the Villanuevas pursuant to Hawaii Rev.Stat. § 431–448(b) in light of the facts and circumstances of this case. As indicated above, NUFIC has not paid underinsured motorist benefits under either policy in question. NUFIC contends that underinsured motorist benefits are not available to the Villanuevas since the accident arose out of the operation of an uninsured rather than an underinsured motor vehicle.

a. Availability of Underinsured Motorist Benefits in an Accident Arising Out of the Operation of an Uninsured Motor Vehicle

The parties concede that the motor vehicle involved in the subject accident was uninsured. The underinsured motorist statute effective at the time of the accident, Hawaii Rev.Stat. § 431–448(b), required that an insurer offer to

each policyholder or applicant for a motor vehicle liability policy optional additional insurance coverage for loss resulting from bodily injury or death suffered by any person legally entitled to recover damages from owners or operators of underinsured motor vehicles.

An "underinsured motor vehicle" is defined as

a motor vehicle with respect to the ownership, maintenance, or use of which the sum of the limits of liability insurance coverage applicable at the time of loss to which coverage afforded by such policy or policies applies is less than the liability for damages imposed by law.

*Id.*

The Villanuevas insist that underinsured motorist coverage must apply when the insured has to rely on his or her own uninsured motorist coverage to pay the sums that should have been paid under a tortfeasor's liability policy had there been one in effect at the time of the accident in question.

NUFIC, however, relies on a decision from this court which held that underinsured motorist coverage only applies where there is inadequate bodily injury insurance, not where there is a complete absence of such insurance. *NUFIC v. Nagtalon*, Civ. No. 88–00864 (D. Hawaii filed April 20, 1989) (order granting plaintiff's motion for summary judgment; order denying defendants' cross motion for summary judgment).[4]

This court is persuaded by the compelling rationale in *Nagtalon.* "Had the legislature intended that underinsurance coverage apply to uninsured vehicles, the legislature would not have defined underinsurance with reference to applicable bodily injury liability insurance." *Id.* To hold that underinsurance coverage applies where there is no underlying bodily injury liability insurance would effectively result in an increase of the accident victim's uninsured motorist coverage and therefore defy

---

went on to reject *Yamaguchi* and distinguish *Mizoguchi,* finding the " 'improvidently' made ... general statement that [Hawaii's] No-Fault Law permitted 'stacking' of no-fault policies ..." to be dictum and not binding. *Rana,* 6 Haw. App. at 9–11, 713 P.2d at 1369–70. The Villanuevas' reliance on *Maldonado, Yamaguchi,* and *Mizoguchi* is therefore misplaced.

4. The legislative history behind the bill shows that the legislature intended the statute to provide "a new optional 'underinsured' motorist coverage provision." Conf. Com. Rep. 45 on H.B. No. 557, *House Journal–Conference Committee Reports,* at 909; S.C.Rep. 689, *Senate Journal–Standing Committee Reports,* at

1181.... The testimony given by Bruce McEwan, CPCU, representing the Hawaii Independent Insurance Agents Association provides the clearest statement regarding the purpose of the underinsurance policy: "The purpose of underinsured motorist coverage is to provide direct protection to the insured when the party who is at fault in the auto accident *does not have bodily injury liability coverage high enough* to cover the total judgment." *See* testimony by Bruce McEwan on S.B. 389, March 1, 1985 and March 22, 1985. (Emphasis added.) *Id.*

any reason for having separate types of coverage. "The same motorist cannot be, at the same time, both uninsured and underinsured; the terms are mutually exclusive." *Berg v. Western Nat. Mut. Ins. Co.*, 359 N.W.2d 726, 729 (Minn.Ct.App. 1984).[5]

Accordingly, NUFIC is entitled to summary judgment as a matter of law and is therefore not obligated to pay any underinsurance benefits to the Villanuevas under either policy. The applicability of underinsurance coverage being resolved in favor of NUFIC, the court need not reach the question of whether underinsured motorist coverage may be stacked.

Plaintiff's motion for summary judgment on this issue is GRANTED. Defendant and counterclaim plaintiffs' motion for partial summary judgment on this issue is DENIED.

C. *Recovery of No–Fault, Uninsured, or Underinsured Motorist Benefits for Wrongful Death and/or Emotional Distress*

■ The Villanuevas claim that each family member is entitled to separate limits of liability coverage to compensate them for the "accidental harm" they sustained as a result of David William's death. Their claims are premised on Hawaii's wrongful death statute and at common law for negligent infliction of emotional distress. Be-

cause the maximum dollar limit of no-fault benefits has been paid on account of David William's death,[6] and underinsurance benefits are not available for the reasons previously set forth,[7] the Villanuevas' claims must be viewed in the context of the policies' uninsured motorist coverage and applicable statutory provisions.

1. *The Policies*

At page three of the respective policies in question, NUFIC agreed to

pay compensatory damages which a **covered person** is legally entitled to recover from the owner or operator of an **uninsured motor vehicle** because of bodily injury [or death] sustained by a **covered person** and caused by an accident.... aris[ing] out of the ownership, maintenance or use of the **uninsured motor vehicle.**

(Emphasis in original). The policies' declaration page limits such coverage to $35,000 for each person which is "the maximum limit of liability for all damages resulting from any one accident.... regardless of the number of **covered persons,** claims made, vehicles or premiums shown in the Declarations, or vehicles involved in the accident." *See* Policies at page 4, respectively (emphasis in original). NUFIC's policies comply with the requirements of Hawaii's uninsured motorist statute effective at the time of the accident.[8]

---

5. Insureds, of course, may contractually increase their uninsured motorist limits of liability coverage beyond the statutory minimum.

6. *See supra* § II.B.1.; *see also* Hawaii Rev.Stat. § 294–3(c). To be entitled to benefits, the no-fault claimant must himself or herself sustain, or be the survivor of the person sustaining, the accidental harm in the motor vehicle accident. *Id.* Maximum no-fault benefits were paid to the estate of David William for the claims, *inter alia,* of his survivors on account of his death. Because the Villanuevas did not themselves sustain accidental harm in the accident in question, there is no independent basis for them to claim no-fault benefits. *See Wong v. Hawaiian Ins. Companies,* 64 Haw. 189, 637 P.2d 1144 (1981) (loss of profits incurred as a result of plaintiff's having to close wholly owned small business to care for son injured in motor vehicle accident not "accidental harm" within definition of no-fault statute).

7. Since the automobile giving rise to the alleged injuries was uninsured, the uninsured provisions of the policy govern and underinsured benefits are not available. *Nagtalon, supra.*

8. Hawaii Rev.Stat. § 431–448. This provision requires coverage in limits for bodily injury or death set forth in section 287–7. Hawaii Rev. Stat. § 287–7 in effect at the time of the accident, incorporates the limits of liability stated in section 294–10(a). Specifically, Hawaii Rev. Stat. § 294–10(a)(1) requires "[l]iability coverage of not less than $35,000 for all damages arising out of accidental harm sustained by any one person as a result of any one accident applicable to each person sustaining accidental harm arising out of ownership [or] use ... of the motor vehicle."

The parties by their motions raise the issue of whether under Hawaii's no-fault law, claims for wrongful death and/or emotional distress damage are derivative, i.e., dependent for their viability upon the death of the close family member in a motor vehicle accident, or independently compensable accidental harms. The parties concede that under Hawaii's no-fault law unless the policy provides otherwise, derivative claims for damages arising from the death of a close family member in a motor vehicle accident are subject to the limits of liability coverage available to satisfy the claims of the accident victim's estate.

### 2. *Wrongful Death Claims*

#### a. Derivative or Independent Claim

■ In *Hara v. Island Insurance Co., Ltd.*, —— Haw. ——, 759 P.2d 1374 (1988), the Hawaii State Supreme Court held that claims for damages brought under Hawaii's wrongful death statute "are derivative and therefore, for purposes of tort liability, stand or fall with the claim of the person actually injured." *Hara*, —— Haw. at ——, 759 P.2d at 1376 (citing *Bertelmann v. Taas Associates*, —— Haw. ——, 735 P.2d 930 (1987)). Therefore, as previously indicated, unless the policy provides otherwise, claims for wrongful death damages are not independently compensable accidental harm under Hawaii's no-fault law and are thus derivative.

The clear and unambiguous terms and conditions of the policies at issue provide and Hawaii Rev.Stat. § 294–10(a)(1) mandates that NUFIC is obligated to pay "all damages" arising out of David William's death *up to the policies' respective limit of liability* for uninsured motorist coverage. "All damages" has been construed to include the type recoverable under Hawaii's wrongful death statute. *See, e.g., Doi v. Hawaiian Ins. & Guar. Co. Ltd.*, 6

Haw.App. 456, 468, 727 P.2d 884, 897 (1986).[9]

■ Because under Hawaii law the Villanuevas' wrongful death damage claims arise out of David William's death, they are subject to the policies' limits of liability available to satisfy the claims of his estate. *See Doi, supra; see also Allstate Ins. Co. v. Hara*, 717 F.Supp. 704 (D. Hawaii 1988) (order denying defendants' cross-motion for summary judgment and granting plaintiff's motion for summary judgment). Accordingly, since the limits of liability for uninsured motorist coverage under the David and Lucille policy have been exhausted by the estate of David William, the Villanuevas are effectively precluded from further recovery under the policy's uninsured motorist coverage for their wrongful death damage claims.

Further, to the extent the Villanuevas are entitled to avail themselves to uninsured motorist coverage under the David B. and Allison policy, their claims for wrongful death damages will likewise be subject to the same limits of liability for uninsured motorist coverage provided in that policy for the claims of David William's estate.[10]

NUFIC is entitled to summary judgment on this issue and therefore is not obligated to pay each of the Villanuevas separate or independent limits of liability coverage under either policy.

Plaintiff's motion for summary judgment on this issue is GRANTED. Defendant and counterclaim plaintiffs' motion for partial summary judgment on this issue is DENIED.

### 3. *Claims for Emotional Distress*

■ The Villanuevas contend that the emotional distress damages that they have allegedly suffered as a result of David William's death are independent compensa-

---

**9.** Recoverable damages under Hawaii's wrongful death statute include loss of society, companionship, comfort, consortium, or protection; loss of marital care, attention, advice, or counsel; loss of filial care or attention; and loss of parental care, training, guidance, or education, suffered as a result of the death of the person by the surviving spouse, children, father, mother, and by any person wholly or partly dependent upon the deceased person. Haw.Rev.Stat. § 663–3.

**10.** *See* David B. and Allison Policy at page 4; Hawaii Rev.Stat. § 294–10(a)(1).

ble "accidental harms" subject to separate limits of liability.

### a. Dependent or Independent Claim

The Hawaii Supreme Court has recognized "that an individual's freedom from negligent infliction of serious mental distress is entitled to *independent* legal protection." *Campbell v. Animal Quarantine Station,* 63 Haw. 557, 559–60, 632 P.2d 1066, 1068 (1981) (citing *Rodrigues v. State,* 52 Haw. 156, 174, 472 P.2d 509, 520 (1970)) (emphasis added). However, for purposes of recovering for accidental harm arising out of a motor vehicle accident under Hawaii's no-fault law, claims for emotional distress "are not independent *to the extent* that they may be asserted without regard to the nature or extent of the injuries to the person suffering accidental harm." *Doi,* 6 Haw.App. at 467, 727 P.2d at 891 (emphasis added). This is best explained by examining the no-fault threshold requirements set forth in Hawaii Rev.Stat. § 294–6.

### b. No–Fault Threshold

"Under the Hawaii No–Fault Law an accident victim may not maintain the traditional negligence tort action against the alleged wrongdoer except as to certain 'serious' [injuries] specified under HRS § 294–6." *Parker v. Nakaoka,* 68 Haw. 557, 560, 722 P.2d 1028, 1030 (1986). Section 294–6 provides in relevant part:

> (a) Tort liability ... with respect to accidental harm arising from motor vehicle accidents occurring in this State, is abolished, except as to the following persons or their personal representatives, or legal guardians, and in the following circumstances:

> (1) *Death* occurs to such person *in such a motor vehicle accident;* or injury occurs to such person which consists, in whole or in part, in a *significant permanent loss of use of a part or function of the body; or* injury occurs to such person which consists of a *permanent and serious disfigurement* which results in subjection of the injured person to mental or emotional suffering.... (Emphasis added).[11]

Like the common law claim for loss of consortium,[12] there would appear to be no clear legislative intent or discernible purpose in abolishing the common law tort claim for serious emotional distress arising from bodily injury or death of a close family member in an automobile accident. However, the assertion of such a claim, including those made for uninsured motorist coverage, must meet one of the specifically enumerated threshold requirements. *Doi,* 6 Haw. at 466, 727 P.2d at 891; Hawaii Rev.Stat. § 294–6(b).

As indicated, section 294–6(a)(1) preserves tort liability in cases of death, permanent loss of use of a part or function of the body, or permanent physical disfigurement subjecting the injured person to mental or emotional suffering. In this subsection [13] the legislature has carved out specific classes of compensable damages arising out of the death or bodily injury occurring to persons *in* motor vehicle accidents as exceptions to the broad general abolition of tort liability provided in section 294–6(a). This indicates a clear intent by the legislature to afford compensation under the statute only for damages arising out of the death or bodily injury of victims actually

---

**11.** Or:

> \*  \*  \*  \*  \*  \*

> (2) Injury occurs to such person *in a motor vehicle accident* in which the amount paid or accrued exceeds the medical-rehabilitative limit established in section 294–10(b) for expenses provided in section 294–2(10)(A) and (B); provided that the expenses paid shall be presumed to be reasonable and necessary in establishing the medical-rehabilitative limit; or

> (3) Injury occurs to such person *in such an accident* and as a result of such injury the aggregate limit of no-fault benefits outlined in section 294–2(10) payable to such person are exhausted.

> This section shall apply whether or not the injured person is entitled to receive no-fault benefits.

> \*  \*  \*  \*  \*  \*

*Id.* (Emphasis added.)

**12.** *See Doi,* 6 Haw. at 466–67, 727 P.2d at 891 (claims for loss of consortium not abolished by Hawaii's no-fault law).

**13.** *See supra* note 11.

injured in a particular motor vehicle accident and not for their survivors' incidental independent damages claims.

Consequently, while there is no question that the Villanuevas' emotional distress damages, if proven, constitute "accidental harm[s] arising from [the] motor vehicle accident[ ]" in question,[14] the court finds that section 294–6(a) has clearly abolished tort liability for such damages to the extent claims are made without regard to the person physically injured in the accident (David William).

Accordingly, to the extent damages may be recovered for negligent infliction of emotional distress under Hawaii's no-fault law, they are effectively derivative, that is, dependent upon the occurrence of one of the aforementioned injuries to the accident victim for their viability. "To hold that [emotional distress] damages do not arise from the injured person's accidental harm would result either in abolishing such claims or creating a cause of action independent of the threshold requirements. Neither result would be in keeping with the legislative intent expressed in [Hawaii's no-fault law]." *Doi*, 6 Haw.App. at 468, 727 P.2d at 892.[15]

Therefore, unless the policy specifically provides otherwise, claims for emotional distress damages arising from the death of a close family member in a motor vehicle accident are not independently compensable accidental harm under Hawaii's no-fault law.

■ Again, under the express terms and conditions of the policies at issue and Hawaii Rev.Stat. § 294–10(a)(1), NUFIC is obligated to pay "all damages" arising out of David William's death *up to the respec-tive policies' limit of liability* for uninsured motorist coverage. The court construes the term "all damages" to include those for emotional distress arising from bodily injury or death of a close family member in an automobile accident.[16] Because under Hawaii's no-fault law the Villanuevas' emotional distress damage claims arise out of David William's death, they are subject to the limits of liability available under the policies in question to satisfy the claims of his estate. *See Doi, supra; see also Allstate Ins. Co. v. Hara, supra.* Accordingly, since in this case the limits of liability for uninsured motorist coverage under the David and Lucille policy have been exhausted by the estate of David William, the Villanuevas are effectively precluded from further recovery under the policy's uninsured motorist coverage provisions for their emotional distress damage claims.

Further, to the extent the Villanuevas are entitled to recover under the uninsured motorist coverage provisions of the David B. and Allison policy, their claims for emotional distress damages will also be subject to the same limits of liability for uninsured motorist coverage provided in that policy for the claims of David William's estate.

Therefore, NUFIC is entitled to summary judgment on this issue and is therefore not obligated to pay separate limits of liability coverage to the Villanuevas under either policy.

Plaintiff's motion for summary judgment on this issue is GRANTED. Defendant and counterclaim plaintiffs' motion for partial summary judgment on this issue is DENIED.

---

**14.** Hawaii Rev.Stat. § 294–6(a).

**15.** The threshold requirements implement the objectives of Hawaii's no-fault law that in return for prompt settlement of claims without regard to fault, an accident victim has given up his or her right to sue for large amounts of general damages. *See Weigand v. Allstate Ins. Companies Ltd.,* 68 Haw. 117, 121, 706 P.2d 16, 19 (1985). This function is "vital and necessary ... in maintaining an economically viable no-fault insurance system for the public." *Parker,* 68 Haw. at 560, 722 P.2d at 1031.

**16.** To construe otherwise would preclude close family members of motor vehicle accident victims from recovering emotional distress damages. Such a result would be inconsistent with the Hawaii Intermediate Court of Appeals' treatment of loss of consortium damages in *Doi, supra.* Because damages for emotional distress and loss of consortium may be characterized as personal to the injured family member and arise on account of the death or bodily injury of a close relative, the court perceives no rational basis in affording them dissimilar treatment.

### D. *Availability of Benefits under the David B. and Allison Policy*

Again, because the maximum limit of no-fault benefits has been paid on account of David William's death,[17] and underinsurance benefits are not available for the reasons previously set forth,[18] the Villanuevas' claims must be viewed in the context of the policies' uninsured motorist coverage and related statutory provisions.

The stacking of uninsured motorist policies and coverages is generally permitted under Hawaii case law.[19] In this regard, NUFIC has in fact stacked and paid uninsured motorist benefits under the David and Lucille policy to the estate of David William. Nevertheless, NUFIC disputes the availability of uninsured motorist coverage under the David B. and Allison policy on the grounds that David William was not a "resident" of the David B. and Allison household. At the same time, however, NUFIC concedes that if David William is found to be a "resident" of David B. and Allison's household as contemplated by the policy it is obligated to pay uninsured motorist coverage under that policy.

The uninsured motorist coverage provisions, Part B, of the policy issued to David B. and Allison provides:

> We will pay compensatory damages which a **covered person** is legally entitled to recover from the owner or operator of an **uninsured motor vehicle** because of bodily injury sustained by a **covered person** and caused by an accident.
>
> \*     \*     \*     \*     \*     \*
>
> "Covered person" as used in this part means:
>
>   1.  You or any **family member.**
>
> \*     \*     \*     \*     \*     \*

*Id.* at 3 (emphasis in original). "Family member" is defined in the policy as "a person related to you by blood, marriage or adoption *who is a resident of your household,* including a ward or foster child." *Id.* at 1.

Both parties agree that the availability of insurance benefits under the David B. and Allison policy depends upon resolution of the question of whether David William was in fact a resident of David B. and Allison's household. Each party has identified conflicting portions of the material on file that they believe demonstrates the absence of any genuine issue of material fact on this question.

There are numerous cases which identify the relevant factors to be considered by this court in making the necessary determination.[20] However, in light of the conflict of facts material to the appropriate resolution of this issue, a final determination will depend upon the credibility of witnesses and other evidence. Therefore, construing the facts in a light most favorable to the Villanuevas, as this court must do, *T.W. Electrical,* 809 F.2d at 630, the court finds there remains genuine issues of material fact which could reasonably be resolved in favor of either party. *See California Arch. Bldg. Prod.,* 818 F.2d at 1468. Consequently, NUFIC's motion for summary judgment on this issue is denied.

### III.  *Conclusion*

In accordance with the court's reasoning and determination:

1.  Plaintiff and counterclaim defendant's motion for summary judgment is GRANTED and defendant and counterclaim plaintiffs' motion for partial summary judgment is DENIED respecting defendant and counterclaimants' claims for recovery of stacked no-fault, underinsured

---

17.  *See supra* note 6.

18.  *See supra* note 7.

19.  *See supra* note 2.

20.  *See Drake v. Donegal,* 422 F.Supp. 272 (1976); *Mon Quon Kok v. Pacific Insurance Co.,* 51 Haw. 470, 462 P.2d 909 (1969); *Hernandez v. Comco Insurance Co.,* 357 So.2d 1368 (La.Ct.App.), *writ denied,* 359 So.2d 1305 (1978); *Workman v.*

*Detroit Automobile Inter-insurance Exchange,* 404 Mich. 477, 274 N.W.2d 373 (1979); *Johnson v. American Economy Ins. Co.,* —— Minn.App. ——, 419 N.W.2d 126 (1988); *Mazzilli v. Accident & Casualty Insurance Co.,* 35 N.J. 1, 170 A.2d 800 (1961); *Hoff v. Hoff,* 132 Pa.Super. 431, 1 A.2d 506 (1938); *Pamperin v. Milwaukee Mutual Ins. Co.,* 55 Wis.2d 27, 197 N.W.2d 783 (1972).

motorist, and uninsured motorist benefits under both policies; and for payment of separate limits of liability for each family member for the wrongful death of David William and for emotional distress.

2. Plaintiff and counterclaim defendant's motion for summary judgment on its claim that it is not obligated to provide uninsured motorist coverage to the estate of David William under the David B. and Allison policy is DENIED.

IT IS SO ORDERED.