881 P.2d 489

FIRST INSURANCE COMPANY OF HAWAI'I, LTD., Plaintiff–Appellant,

v.

Frederick D. LAWRENCE, Sr., Individually and as Guardian Ad Litem for Frederick D. Lawrence, Jr.; Carolyn A. Lawrence; Frederick D. Lawrence, Jr., Minor;

Christopher T.F.K. Smith, Sr., Individually and as Special Administrator of the Estate of Christopher T.F.K. Smith, Jr.; Mary A.L. Smith; Cyd L. Smith, Individually and as Guardian Ad Litem for Keikilaniilipanio K. Smith, Iokua K. Smith and Tiare A. Smith, Minors;

Eric Costillio; Orlando Bitanga, Minor; Raphael Bitanga, Individually and as Guardian Ad Litem for Orlando Bitanga; Catalina Bitanga; and Elmer Bitanga, Defendants–Appellees,

and

William Gaspar; Honolulu Police Department; City and County of Honolulu; John Does 1–10; Jane Does 1–10; Doe Partnerships 1–10; Doe Corporations 1–10; Doe "Non–Profit" Corporations 1–10; and Doe Governmental Entities 1–10, Defendants.

No. 15465.

Supreme Court of Hawai'i.

Sept. 16, 1994.

Reconsideration Denied Oct. 18, 1994.

Colbert M. Matsumoto (Leigh–Ann K. Miyasato and Ward F.N. Fujimoto, with him on the briefs, of Fujiyama, Duffy & Fujiyama), Honolulu, for plaintiff-appellant First Ins. Co. of Hawai'i, Ltd.

James J. Bickerton (William W. Saunders, with him on the brief, of Bickerton, Saunders, Dang & Bouslog), Honolulu, for defendants-appellees the Smiths.

Alan B. Burdick, Belchertown, MA, for defendants-appellees the Lawrences.

Wendell K. Kimura, on the amicus briefs, Honolulu, for amicus curiae, Hawai'i Insurers Council.

Wayne M. Sakai and Kunio Kuwabe of Burke, Sakai, McPheeters, Bordner & Gilardy, on the amicus briefs, Honolulu, for amicus curiae, Liberty Mut. Ins. Co.

James J. Bickerton and William W. Saunders, Jr. of Bickerton, Saunders, Dang & Bouslog, on the motion for reconsideration, Honolulu, for defendants-appellees the Smiths.

Colbert M. Matsumoto of Matsumoto, LaFountaine & Chow and Michael N. Tanoue of Tanoue & Tanaka, on the memorandum in opposition, Honolulu, for plaintiff-appellant First Ins. Co. of Hawai'i, Ltd.

Before LUM, C.J.,* MOON and LEVINSON, JJ., HEEN, Intermediate Court of Appeals Associate Judge, in place of

---

* Chief Justice Lum, who heard oral argument in this case, retired from the bench on March 31, 1993. *See* Hawai'i Revised Statutes (HRS) § 602–10.

**4**

KLEIN, J., recused, and HAYASHI,** Retired Justice, assigned by Reason of Vacancy.

MOON, Chief Justice.***

In this action for declaratory relief, plaintiff-appellant First Insurance Company of Hawai'i, Ltd. (First Insurance) sought a judicial determination of its duty to defend and indemnify defendants-appellees Frederick D. Lawrence, Sr., Carolyn A. Lawrence, and Frederick D. Lawrence, Jr. (collectively, the Lawrences) under an automobile and homeowner's policy[1] for the claims made against them in an underlying wrongful death action, *Christopher T.F.K. Smith, Sr. v. Frederick D. Lawrence, Jr.,* Civ. No. 88–2531–08, filed in the First Circuit Court by defendants-appellees Christopher T.F.K. Smith, Sr., individually and as Special Administrator of the Estate of Christopher T.F.K. Smith, Jr.; Mary A.L. Smith; and Cyd L. Smith, Individually and as Guardian Ad Litem for Keikilaniilipanio K. Smith, Iokua K. Smith, and Tiare A. Smith, minors (collectively, the Smiths) [hereinafter, the Lawrences and the Smiths are collectively referred to as appellees].[2]

■ First Insurance appeals from the circuit court's denial of its motion for partial summary judgment on the issue of coverage regarding the Smiths' claims for negligent infliction of emotional distress (NIED). Essentially, the court held that the Smiths' NIED claims are separate, common-law torts and constitute "accidental harm" within the meaning of Hawai'i Revised Statutes (HRS) § 294–2(1) (1985).[3] The court also concluded that a separate liability coverage limit is available for each proven NIED claim. First Insurance also appeals the circuit court's de-

nial of its motion for reconsideration of the court's aforementioned rulings.

For reasons discussed below, we hold that: (1) the statutory definition of accidental harm includes emotional distress; (2) although NIED claims are entitled to independent protection under general Hawai'i tort law, such claims under Hawai'i's No–Fault Law, HRS chapter 294, are derivative, subject to the exception discussed below; and (3) derivative claims are not subject to separate "each person" liability coverage limits. Based on the specific language of First Insurance's limitation of liability provision, which we believe to be consistent with the no-fault law, we also hold that the derivative NIED claims of the Smiths are subject to the single liability coverage limit applicable to Christopher's death. Accordingly, we affirm in part and reverse in part the circuit court's denial of First Insurance's motion for partial summary judgment. Because First Insurance's motion for reconsideration raised an issue that it could have and should have raised in its motion for partial summary judgment, we hold that the circuit court did not abuse its discretion in denying the motion for reconsideration.

## I. *FACTS*

The basic facts of the underlying wrongful death action filed by the Smiths are not in dispute. On June 8, 1988, Frederick D. Lawrence, Jr. (Frederick) had been drinking beer with some friends, including Orlando Bitanga. Frederick, an unlicensed minor who was reportedly intoxicated at the time of the accident, was operating a vehicle owned

---

** Retired Justice Hayashi heard oral argument in this case pursuant to a general order temporarily assigning him to a vacancy on the court. The temporary assignment expired prior to the filing of this opinion. *See* HRS § 602–10.

*** At the time this case was argued, Justice Moon was an associate justice of the supreme court. On March 31, 1993, Justice Moon was sworn in as Chief Justice of the Supreme Court of Hawai'i.

1. We note that the issues regarding the homeowner's policy as well as First Insurance's obligation to defend Frederick D. Lawrence, Sr. and Carolyn A. Lawrence are not before the court.

2. The Lawrences and the Smiths submitted separate briefs; however, their arguments are essentially the same and, therefore, refer to both in this opinion as appellees. We refer to them by name if their arguments differ substantially.

3. Although Hawai'i's No–Fault Law, HRS chapter 294 (1985), was repealed in 1987, it is applicable here because the recodified chapter, HRS chapter 431:10C, became effective after the date of the accident involved in this case. *See* 1987 Haw.Sess.L., Act 347, § 1 at 1.

by Bitanga's older brother.[4] Noticing that Frederick was having difficulty controlling the vehicle, the police attempted to stop him. While being pursued by the police, Frederick struck and killed Christopher T.F.K. Smith, Jr. (Christopher), a pedestrian. The Smiths were not involved in nor did they witness the accident.

On August 15, 1988, the Smiths—Christopher's parents, Christopher, Sr. and Mary; his wife, Cyd and their three children, Keikilaniilipanio, Iokua, and Tiare—filed their wrongful death action against numerous parties, including Frederick and his parents, Frederick Lawrence, Sr. and Carolyn Lawrence. At the time of the accident, the Lawrences were insured under an automobile insurance policy issued by First Insurance. First Insurance denied coverage for all the Lawrences and filed the instant declaratory judgment action, seeking a judicial determination of its rights and obligations under the personal automobile policy issued to the Lawrences.

First Insurance moved for partial summary judgment, contending that the Smiths' NIED claims, similar to loss of consortium and wrongful death claims, were derivative and, therefore, subject to a single limit of liability coverage under the policy. First Insurance also argued that recovery for accidental harm is limited to persons at the accident scene. The circuit court, relying on *Rodrigues v. State*,[5] 52 Haw. 156, 472 P.2d 509 (1970) and *Campbell v. Animal Quarantine Station*,[6] 63 Haw. 557, 632 P.2d 1066 (1981), held that NIED "is an independent tort requiring proof based on ordinary tort principles.... and exists apart from the underlying tort claimed by the 'host' tort plaintiff[.]" The circuit court also concluded:

> Accordingly, claims for [NIED] differ from statutory wrongful death claims arising under H.R.S. § 663–3 and from common-law claims for loss of consortium.

The latter claims are derivative of the injury to the spouse or other specified relative. *See Hara v. Island Insurance Co.*, [70] Haw[.] [42], 759 P.2d 1374 (1988); *Doi v. Hawaiian Insurance & Guaranty Co.*, 6 Haw[.] App. [456], 727 P.2d 884 (1986).

> Because the tort of [NIED] is a separate, common-law tort[ ] and constitutes "accidental harm" arising out of a motor vehicle accident, a separate liability coverage limit is available to cover the emotional distress claim proved by each of the Smith Parties.

First Insurance subsequently filed a motion for reconsideration or clarification of the circuit court's ruling, which the court denied; First Insurance appealed.

## II. STANDARD OF REVIEW

"On appeal, an order of summary judgment is reviewed under the same standard applied by the trial courts. Summary judgment is appropriate where the moving party demonstrates that there are no genuine issues of material fact and it is entitled to judgment as a matter of law." *Reed v. City and County of Honolulu*, 76 Hawai'i 219, 225, 873 P.2d 98, 104 (Sup.1994) (citing *Kaneohe Bay Cruises, Inc. v. Hirata*, 75 Haw. 250, 258, 861 P.2d 1, 6 (1993)).

## III. DISCUSSION

As stated previously, the circuit court held that emotional distress constitutes "accidental harm," within the meaning of HRS § 294–2(1). The court also held that the Smiths' NIED claims are separate, common-law torts existing separate and apart from the "host" tort plaintiff. As such, the court determined that a separate liability coverage limit is available for each proven NIED claim. We address each of these rulings in turn.

However, because the insurance policy at issue here utilizes the phrase "bodily injury"

---

4. The vehicle, owned by Elmer C. Bitanga, was insured by Liberty Mutual Fire Insurance Company.

5. In *Rodrigues*, this court allowed plaintiffs to recover in tort for emotional distress resulting from plaintiffs having witnessed damages to their house after it flooded.

6. In *Campbell*, this court allowed plaintiffs to recover for the emotional distress suffered when they learned, by telephone, about the death of their dog, which was being cared for at the Animal Quarantine Station.

instead of "accidental harm," we preliminarily address whether the terms are, as First Insurance contends, synonymous. We begin with the well-settled principle that " '[i]nsurance policies are governed by statutory requirements in force and effect at the time such policies are written. . . . Such provisions are read into each policy issued thereunder, and become a part of the contract with full and binding effect upon each party.' " *AIG Hawai'i Ins. Co. v. Estate of Caraang*, 74 Haw. 620, 633, 851 P.2d 321, 328 (1993) (citing *National Union Fire Ins. Co. v. Ferreira*, 71 Haw. 341, 345, 790 P.2d 910, 912 (1990)).

■ The statutory provision governing required policy coverage, HRS § 294–10(a), provides in relevant part that

> [i]n order to be a no-fault policy, an insurance policy covering a motor vehicle shall provide . . .
>
> (1) Liability coverage of not less than $35,000 for all damages arising out of <u>accidental harm</u> sustained by any one person as a result of any one accident applicable to each person sustaining <u>accidental harm</u> arising out of ownership, maintenance, use, loading, or unloading, of the insured vehicle[.]

HRS § 294–10(a)(1) (1985) (underscoring added). "Accidental harm" is defined as "bodily injury, death, sickness, or disease caused by a motor vehicle accident to a person." HRS § 294–2(1).

Pursuant to the terms of its policy, First Insurance agreed to "pay damages for <u>bodily injury</u> or property damage for which any covered person becomes legally responsible because of an auto accident." Policy at 2 (underscoring added) (emphasis in original omitted). "Bodily injury" is not defined in the policy; however, it is patently clear that "bodily injury" is not equivalent to the broader statutory definition of "accidental harm," which includes bodily injury, death, sickness, or disease. Consequently, the policy fails to meet the statutory requirement of liability coverage for "accidental harm." Because such statutory requirements "are read into each policy . . . and become a part of the contract," *Ferreira*, 71 Haw. at 344, 790 P.2d at 912, we read "accidental harm" into the liability coverage of the policy in lieu of "bodily injury." Such construction is supported by the policy itself, which provides that "[i]n the event any provision of this policy . . . is in conflict with the Hawai'i No–Fault Law, such law shall take precedence over the policy . . . provision." Policy at 12.

### A. Whether Emotional Distress Constitutes "Accidental Harm"

First Insurance argues that the statutory definition of "accidental harm" does not support an expansive reading to include emotional distress because, when the legislature enacted Hawai'i's original no-fault law, it intended "accidental harm" to be synonymous with "bodily injury" as used in the predecessor statute, Revised Laws of Hawai'i (RLH) § 160–103 (1955).[7] First Insurance contends that if the legislature had intended accidental harm to encompass emotional distress, it would have clearly included it in the statutory definition insofar as such a claim was first recognized in *Rodrigues v. State*, 52 Haw. 156, 472 P.2d 509 (1970)—a case decided prior to the enactment of the no-fault law. First Insurance takes the position that the express absence of the phrase "emotional distress" from the statutory definition of accidental harm clearly indicates that the legislature did not intend for such a tort claim to constitute accidental harm.

---

7. RLH § 160–103 provided in relevant part:

**Owner's policy requirements.** An owner's policy of liability insurance:

. . . .

(b) Shall insure the person named therein and any other person, as insured, using any such motor vehicle . . . against loss from the liability imposed by law for damages arising out of the ownership, maintenance or use of such motor vehicle or motor vehicles within the Territory . . . subject to limits exclusive of interest and costs, with respect to each such motor vehicle as follows: $5,000 because of *bodily injury* to or death of one person in any one accident, and subject to such limit for one person, $10,000 because of *bodily injury* to or death of two or more persons in any one accident, and $1,000 because of injury to or destruction of property of others in any one accident.

(Emphasis added.)

"Statutory language 'must be read in the context of the entire statute and construed in a manner consistent with the purpose of the statutes.'" *Methven–Abreu v. The Hawaiian Ins. & Guar. Co., Ltd.,* 73 Haw. 385, 392, 834 P.2d 279, 284 (citing *Pacific Ins. Co. v. Oregon Auto. Ins. Co.,* 53 Haw. 208, 212, 490 P.2d 899, 902 (1971)), *recon. denied,* 73 Haw. 625, 838 P.2d 860 (1992).

As previously stated, HRS § 294–2(1) defines accidental harm as "bodily injury, death, sickness, or disease caused by a motor vehicle accident to a person." Because this definition does not expressly include or exclude emotional distress, we must "'ascertain and give effect to the legislature's intention to the fullest degree,'" *id.* (citation omitted), in determining whether emotional distress is encompassed within "bodily injury, death, sickness, or disease." HRS § 294–2(1).

■ Although we have not previously had the occasion to address this issue, other jurisdictions have construed similar terminology. For example, in *Lavanant v. General Accident Insurance Co.,* 164 A.D.2d 73, 561 N.Y.S.2d 164 (1990), the court determined that an insurance policy providing indemnity for damages resulting from bodily injury, which the policy defined as "bodily injury, sickness or disease," included emotional distress. *Id.* at 75, 79, 561 N.Y.S.2d at 165, 168. The New York court, reviewing several cases from other jurisdictions [8] interpreting insurance policies that provided damages for bodily injury, which expressly included "bodily injury, sickness or disease," determined that such jurisdictions had expanded the scope of bodily injury beyond physical harm to include emotional and psychological effects of incidents. *Id.* at 78, 561 N.Y.S.2d at 167–68.

We agree with the reasoning in *Lavanant* wherein the court concluded that an average person reading the insurance policy "would not conclude that mental anguish [9] was excluded from the ambit of 'sickness.'" *Id.* at 81, 561 N.Y.S.2d at 168; *see also Voorhees v. Preferred Mut. Ins. Co.,* 246 N.J.Super. 564, 588 A.2d 417, 420–23, *cert. denied,* 126 N.J.

340, 598 A.2d 897 (1991), *aff'd,* 128 N.J. 165, 607 A.2d 1255 (1992). Although the New York court interpreted "bodily injury" as defined in an insurance policy, the definition is virtually identical to the definition of accidental harm in HRS § 294–2(1). Accidental harm under HRS § 294–2(1) includes sickness or disease. Additionally, this court has acknowledged the intertwining of the physical and emotional aspects involved in negligently-inflicted emotional distress. *See Leong v. Takasaki,* 55 Haw. 398, 411–13, 520 P.2d 758, 766–67 (1974) (negligently-inflicted mental distress may be characterized as a reaction to a traumatic stimulus, which may be physical or purely psychic).

Further, because the terms "sickness" and "disease" have not been defined by the legislature, we look to their plain and common meaning for guidance. "Sickness" means "an ailment of such character as to affect *the general soundness of health* [.]" *Black's Law Dictionary* at 1380 (6th ed. 1990) (emphasis added). "Disease" is defined as "any deranged or depraved condition, as of the mind, society, etc." *Webster's Encyclopedic Unabridged Dictionary of the English Language* at 411 (1989). We believe such definitions include emotional distress to the extent that it may "affect the general soundness of health" and involve a "depraved condition ... of the mind."

We therefore agree with the trial court's ruling that accidental harm, under HRS chapter 294, includes emotional distress.

B. *Whether the Smiths' Emotional Distress Claims Are Separate, Independent Common–Law Torts Existing Separate And Apart From the "Host" Tort Plaintiff And Thus Entitle Them To Separate "Each Person" Liability Coverage*

■ In enacting Hawai'i's no-fault law, the legislature abolished tort liability for accidental harm arising from motor vehicle accidents wherein an accident victim was no longer able "to maintain a traditional negligence tort

---

8. *See, e.g., Loewenthal v. Security Ins. Co. of Hartford,* 50 Md.App. 112, 436 A.2d 493 (1981); *NPS Corp. v. Insurance Co. of North America,* 213 N.J.Super. 547, 517 A.2d 1211 (1986).

9. The terms "emotional distress," "mental anguish," and "mental distress" are synonymous. *See generally Rodrigues* and *Campbell, supra.*

action against an alleged wrongdoer" except in specific circumstances as delineated under HRS § 294-6. *Parker v. Nakaoka,* 68 Haw. 557, 560, 722 P.2d 1028, 1030 (1986) (citing 1983 Haw.Sess.L., Act 245, § 1 at 518-19; Sen.Stand.Comm.Rep. No. 402, in 1973 Senate Journal at 817, 818); *see also Barcena v. Hawaiian Ins. & Guar. Co.,* 67 Haw. 97, 102, 678 P.2d 1082, 1086 (1984).

HRS § 294-6 provides in relevant part:

**Abolition of tort liability.** (a) Tort liability of the owner, operator, or user of an insured motor vehicle, or the operator or user of an uninsured motor vehicle, or the operator or user of an uninsured motor vehicle who operates or uses such vehicle without reason to believe it to be an uninsured motor vehicle, with respect to accidental harm arising from motor vehicle accidents occurring in this State, is abolished, except as to the following persons or their personal representatives, or legal guardians, and in the following circumstances:

(1) Death occurs *to such person in such a motor vehicle accident;* or injury occurs to such person which consists, in whole or in part, in a significant permanent loss of use of a part or function of the body; or injury occurs to *such person* which consists of a permanent and serious disfigurement which results in subjection of the injured person to mental or emotional suffering;

(2) Injury occurs *to such person in a motor vehicle accident* in which the amount paid or accrued exceeds the medical-rehabilitative limit established in section 294-10(b) for expenses provided in section 294-1(10)(A) and (B); provided that the expenses paid shall be presumed to be reasonable and necessary in establishing the medical-rehabilitative limit; or

(3) Injury occurs *to such person in such an accident* and as a result of such injury the aggregate limit of no-fault benefits outlined in section 294-2(10) payable to such person are exhausted.

HRS § 294-6(a) (emphasis added).

■ Pursuant to the plain and unambiguous language of HRS § 294-6(a), persons or their personal representatives or legal guardians may assert a claim for accidental harm

as long as the threshold requirements are met—the first being that death or injury occurs "to such person **in**" a motor vehicle accident. The phrase "such person" in subsections (1), (2), and (3) above refers to the phrase "persons, or their personal representatives or legal guardians"; they are the sole individuals who may maintain claims for accidental harm against a wrongdoer, and "such person" must have been "in" the accident. Here, Christopher was the only person who died *in* the motor vehicle accident. Although the Smiths claim that their emotional distress claims *arose out of* a motor vehicle accident in which Christopher was killed, none of the Smiths sustained their accidental harm *in* the accident. Thus, the plain language of HRS § 294-6(a) appears to mandate that the Smiths are unable to bring a separate, independent suit for their alleged emotional distress.

However, because the provisions of HRS § 294-6 are in derogation of principles of common law tort liability, they "must be strictly construed and, where it does not appear that there was a legislative purpose in the statute to supersede the common law, the common law applies." *Doi v. Hawaiian Ins. & Guar. Co., Ltd.,* 6 Haw.App. 456, 465, 727 P.2d 884, 890 (1986); *see Burns Int'l Sec. Servs., Inc. v. Department of Transp.,* 66 Haw. 607, 611, 671 P.2d 446, 449 (1983); *Fonseca v. Pacific Constr. Co., Ltd.,* 54 Haw. 578, 585, 513 P.2d 156, 160 (1973). The legislative purpose in enacting HRS chapter 294 is clear; it was

to reform the existing system of reparations for damages arising from motor vehicle accidents in order to provide motor vehicle accident victims assured, adequate and prompt reparation for certain economic losses without regard to fault. The clear objectives of the law are to: (1) institute insurance reform in order to (a) expedite the settling of all claims, (b) create a system of reparations for injuries and loss arising from motor vehicle accidents, (c) compensate these damages without regard to fault, and (d) modify tort liability for these accidents; and (2) to reduce the cost of motor vehicle insurance by establishing

a uniform system of motor vehicle insurance.

*Doi,* 6 Haw.App. at 465–66, 727 P.2d at 890 (citations omitted).

■ We acknowledge that within the tort context, there exists independent legal protection for NIED claims in this jurisdiction. Such claims were first recognized in *Rodrigues,* wherein this court determined that "the interest in freedom from negligent infliction of *serious* mental distress is entitled to independent legal protection." *Rodrigues,* 52 Haw. at 174, 472 P.2d at 520 (emphasis added). Thus, the *Rodrigues* court held that "there is a duty to refrain from the negligent infliction of serious mental distress." *Id.* The duty, however, "is only to those foreseeably endangered by the conduct and only with respect to those risks or hazards whose likelihood made the conduct unreasonably dangerous." *Campbell v. Animal Quarantine Station,* 63 Haw. 557, 560, 632 P.2d 1066, 1068 (1981) (citing *Rodrigues,* 52 Haw. at 174, 472 P.2d at 521). The absence of resulting physical injury is not a bar to recovery, but rather evidence of the degree of emotional distress suffered. *Leong,* 55 Haw. at 403, 520 P.2d at 762. Moreover, "there is no requirement that plaintiffs must actually witness the tortious event in order to recover." *Campbell,* 63 Haw. at 557, 632 P.2d at 1066; *see also Masaki v. General Motors Corp.,* 71 Haw. 1, 18, 780 P.2d 566, 576, *recon. denied,* 71 Haw. 664, 833 P.2d 899 (1989). The non-witnessing of the accident is also a factor to be considered in determining the degree of emotional distress suffered. *Masaki,* 71 Haw. at 18, 780 P.2d at 576.

The Smiths maintain that, like the claimants in *Rodrigues* and *Campbell,* they should be able to assert independent claims of emotional distress separate and apart from the claim being made on behalf of Christopher by his estate. Additionally, the Smiths contend that they should be entitled to separate "each person" limits of liability coverage. However, the crucial distinction overlooked by the appellees is that the Smiths' NIED claims are not being reviewed within a "pure" tort context. Moreover, the appellees

have apparently overlooked the fact that *Rodrigues* and *Campbell* were not considered within the context of automobile insurance coverage.

■ In this case, the Smiths claims are based on their emotional distress due to Christopher's death in the accident. Common sense dictates that but for Christopher's death, they would not have any claims of severe emotional distress to assert in the first instance.

In *Hoke v. Paul,* 65 Haw. 478, 653 P.2d 1155 (1982), the spouse of an allegedly defamed police officer claimed that she suffered loss of consortium and emotional distress as a result of the alleged defamation. This court held that such claims were "not independent," stating:

> If, on trial, she proves damage by reason of loss of consortium arising out of [defendant's] alleged tortious actions with respect to [her husband] and/or she establishes, according to the standard laid down in *Rodrigues, supra,* that she has suffered damages by way of *emotional distress* arising out of [defendant's] alleged tortious conduct with respect to [her husband], she should be entitled to recover therefore on any count on which [her husband] recovers damages. *Her claim for relief, however, is not independent.* If the jury, on trial, finds against [her husband] and for [the defendant] on either Counts I or II or both, then judgment should also be rendered against [her] on such count or counts.

*Id.* at 485, 653 P.2d at 1160–61 (emphasis added); *see also Masaki,* 71 Haw. at 4–5, 780 P.2d at 569–70 (trial court reduced damages for emotional distress suffered by parents by proportion of contributory negligence on the part of injured son); *Bertlemann v. Taas Associates,* 69 Haw. 95, 735 P.2d 930 (1987) (where decedent's recovery was barred, so were his survivors' derivative wrongful death claims). Because the Smiths' claims clearly originates from the primary claim—the death of Christopher—we conclude that such claims are derivative.[10] In fact, the Law-

---

10. "Derivative" means "[t]hat which has not its origin in itself, but owes its existence to some-

thing foregoing." *Mist v. Westin Hotels, Inc.,* 69

rences agree "that the Smiths' claims are derivative of the main claim in the sense that their viability is dependent on the viability of the main claim."

We believe that HRS § 294–6(a) codifies the treatment of derivative claims consistent with the great majority of jurisdictions that do not allow separate "each person" limits for derivative claims, including NIED. These courts have held that recovery of insurance proceeds for derivative claims are limited to a single "each person" limit applicable to the "host" plaintiff.

A noted commentator has stated that:

In uninsured motorists coverage cases the great majority of the courts have held that consequential and derivative loss claimants who were not themselves ... injured *in the accident* did not sustain separate bodily injury [accidental harm] within the contemplation of the policy language. Thus, where only a single injury was involved, claims for loss of consortium, mental anguish, and medical expenses arising out of injury to the injured person have been held ineffective to activate the policy's multiple injury limits.

Liability policies contain a virtually identical Limits of Liability provision governing the insurer's obligation to pay damages sustained by third parties. The legal concepts and considerations pertaining to liability coverage limits are essentially the same as those pertaining to uninsured motorists coverage limits, and the majority of courts have similarly held that *claims for loss of consortium, mental anguish, and derivative medical expense do not activate the policy's "per accident" limits where only one person sustained injury or death in the accident.*

G. Schermer, *Automobile Liability Insurance* § 25.02(1) (1989) (emphasis added). In this regard, our courts have also followed the majority view.

In *Doi,* the Intermediate Court of Appeals (ICA) reviewed the independent versus derivative nature of a loss of consortium claim in the no-fault and automobile insurance context and determined that there was

Haw. 192, 196, 738 P.2d 85, 89 (1987) (citation

no clear legislative intent or purpose in chapter 294 to supersede the common law and abolish derivative claims such as loss of consortium arising from bodily injuries suffered by one's spouse in an automobile accident. Therefore, derivative claims resulting from injuries arising from automobile accidents are not abolished by HRS § 294–6. However, the assertion of such claims must meet the threshold requirements of § 294–6. It follows that such derivative claims are not independent *to the extent* that they may be asserted without regard to the nature or extent of the injuries to the person suffering accidental harm.

*Doi,* 6 Haw.App. at 466–67, 727 P.2d at 891 (emphasis added).

Also, in *Hara v. Island Insurance Co.,* 70 Haw. 42, 759 P.2d 1374 (1988), we noted that the plaintiffs-survivors were not themselves injured *in* the accident and that their wrongful death claims, brought pursuant to HRS § 663–3, "are derivative, for purposes of tort liability and stand or fall with the claim of the person actually injured." *Id.* at 44, 759 P.2d at 1376.

Likewise, the United States District Court for the District of Hawai'i, in *National Union Fire Insurance Co. v. Villaneuva,* 716 F.Supp. 450 (D.Haw.1989), reviewing the independent versus derivative nature of a claim for NIED, reached the same conclusion. The federal court reasoned that:

In [HRS § 294–6(a)(1) ] the legislature has carved out specific classes of compensable damages arising out of the death or bodily injury [accidental harm] occurring to persons in motor vehicle accidents as exceptions to the broad general abolition of tort liability provided in section 294–6(a). This indicates a clear intent by the legislature to afford compensation under the statute only for damages arising out of the death or bodily injury [accidental harm] of victims actually injured in a particular motor vehicle accident and not for their survivors' incidental independent damages claims.

Consequently, while there is no question that the [plaintiffs'] emotional distress

omitted).

damages, if proven, constitute "accidental harm[s] arising from [the] motor vehicle accident[ ]" in question, the court finds that section 294–6(a) has clearly abolished tort liability for such damages **to the extent** claims are made without regard to the person ... injured in the accident.

Accordingly, **to the extent** damages may be recovered for negligent infliction of emotional distress under Hawaii's no-fault law, they are effectively derivative, that is, dependent upon the occurrence of one of the aforementioned injuries to the accident victim for their viability.

*Id.* at 458–59 (footnotes omitted) (underscoring in original) (bold emphasis added).

Appellees contend that the court in *Villanueva* failed to foresee that some derivative emotional distress claims could meet a tort threshold either based on HRS § 294–6(a)(2) or (3), that is, reaching the medical-rehabilitative amounts set forth in HRS § 294–10(b),[11] or exhausting no-fault benefits provided for in § 294–2(10).[12] Even if one of the Smith claimants could meet one of the aforementioned thresholds, he or she must first meet the threshold requirement that his or her accidental harm occurred "in" the accident. Moreover, meeting one of the aforementioned thresholds does not change the fact that his or her claim is "derivative."

Appellees assert that other jurisdictions have found that claims for emotional distress are subject to separate limits of liability and cite, as support for this proposition, *State Farm Mutual Automobile Insurance Co. v. Ramsey*, 295 S.C. 349, 368 S.E.2d 477 (S.C.Ct.App.), *aff'd*, 297 S.C. 71, 374 S.E.2d 896 (S.C.1988); *Wolfe v. State Farm Insurance Co.*, 224 N.J.Super. 348, 540 A.2d 871, *cert. denied*, 111 N.J. 654, 546 A.2d 562 (1988); *Employers Casualty Insurance Co. v. Foust*, 29 Cal.App.3d 382, 105 Cal.Rptr. 505 (1972). We have reviewed these cases and find a common, factually distinguishable

thread running through them. In *Ramsey*, the mother witnessed her daughter being fatally struck in an automobile accident. In *Wolfe*, the father pulled his daughter from a car where she had been fatally exposed to carbon monoxide and carried her into the home where he and his wife helplessly watched a first aid squad's attempt at revival fail. Finally, in *Foust*, a mother witnessed the automobile accident where her son was struck and the father learned of his child's severe injuries within ten minutes of the accident.[13]

In all three cases, a family member directly witnessed the accident. Here, none of the Smiths were present at the accident scene and their basis to recover damages is upon the emotional distress they allegedly suffered after Christopher's death. Thus, the Smiths' claims are consequentially related to Christopher's death.

Moreover, in *Ramsey* and *Foust*, both courts relied on cases which sustained bystanders' causes of action for emotional distress due to witnessing the death or injury of a relative in allowing separate "each person" limits. Neither case indicated whether the same result would be reached where, as in this case, the claimants did not witness the accident.

On the other hand, the court in *Wolfe*, although allowing additional coverage for emotional distress, implied in its reasoning that a difference exists where NIED claimants have not witnessed the accident resulting in injury or death:

> While any harm to a spouse or a family member causes sorrow, we are here concerned with a more narrowly confined interest in mental and emotional stability. When confronted with accidental death, the reaction to be expected of normal persons, ... is shock and fright. It is the sensory perception of a shocking event

---

**11.** The medical-rehabilitative threshold established by the insurance commissioner, pursuant to HRS § 294–10(b), was $6,400.00 in 1988 (the year of the accident).

**12.** The aggregate limit of no-fault benefits established pursuant to HRS § 294–2(10) was $15,-000.00 per person.

**13.** The opinion does not indicate how the father learned of his child's injuries, that is, whether he came upon the scene of the accident ten minutes after it had occurred and observed the serious injuries or learned of it by other means.

which causes a separate, compensable injury. In a *Portee* claim,[14] it is the plaintiff's perception which causes the perceiver to suffer a traumatic sense of loss. Such emotional distress is not equivalent of grief from losing a loved one, but is inflicted by the trauma of seeing a loved one suffer or die or of seeing efforts to revive her being unsuccessful.

*Wolfe*, 224 N.J.Super. at 352, 540 A.2d at 873 (citations omitted) (internal quotation marks omitted).

Of further significance in *Wolfe* is that the court distinguished *United Pacific Insurance Co. v. Edgecomb*, 41 Wash.App. 741, 706 P.2d 233 (1985), specifically recognizing the difference in the analysis when a NIED claimant was not a witness to the accident. The *Wolfe* court noted that "[i]n *Edgecomb*, the court [in holding that there was no additional per person coverage] stated that the father's claim was derivative from his son's injuries *particularly because he did not witness the accident* [.]" *Wolfe*, 224 N.J.Super. at 353, 540 A.2d at 874 (emphasis added).

In *Edgecomb*, the Washington Court of Appeals refused to apply a separate "each person" limit of liability for a father's claim for grief and mental anguish arising from his son's serious injuries sustained in an auto accident. The court reasoned:

The [father's] grief and mental anguish are consequential damages arising from the injuries to [his son] rather than direct damages. Therefore, the damage award for injuries to the child is combined with the damage award for the parent's anguish and grief which are derivative of and entirely dependent upon the injury to the child. . . .

[The father] is claiming damages for his injuries resulting from witnessing the consequences of the accident upon his son, not from witnessing the occurrence of the accident itself.

It is not disputed that [the father] suffered grief and mental anguish and that such damages are recoverable either under RCW 4.24.010 or as the result of negligent infliction of mental distress. Rather, the

dispute centers around coverage under the insurance policy, which must be read as limiting the obligation to pay damages that are derivative or consequential from the injuries to one person to the limits of the policy for injury to that person.

*Edgecomb*, 41 Wash.App. at 743–44, 706 P.2d at 234 (internal citations omitted) (footnote omitted).

On the other hand, in *Crabtree v. State Farm Insurance Co.*, 632 So.2d 736 (La. 1994), the wife of a motorcycle rider brought a claim for damages based on loss of consortium and emotional distress. The wife was following her husband in another vehicle when she witnessed a vehicle strike him head-on. Upon going to his aid, the wife observed that one of her husband's legs had been almost completely severed below the knee. State Farm tendered the per person limit of $25,000.00 to the husband. The wife sought a declaration that the emotional distress she suffered constituted a separate bodily injury from her husband's, thereby invoking the $50,000.00 per occurrence limits of the policy. State Farm argued that the wife was merely a witness to the accident and not involved in it. The issues before the court were whether the wife suffered a bodily injury, and if so, whether that bodily injury was suffered "in the same accident." In ruling that the per occurrence limits applied, the court explained:

[plaintiff] saw her husband violently struck and severely injured by an oncoming car. She suffered mental pain and anguish precisely because she witnessed the event which caused the severe injuries to her husband. The same accident which caused [the husband's] "bodily injury [accidental harm]" also caused [the plaintiff's] "bodily injury [accidental harm]."

We conclude [that plaintiff's] "bodily injury," the mental anguish she suffered when she saw the car strike her husband and when she ran to his side to comfort him, occurred "in the same accident" as that which caused [her husband's] bodily injuries.

14. "Portee claim" refers to *Portee v. Jaffee*, 84 N.J. 88, 417 A.2d 521 (1980), wherein the court

held that emotional distress claims are not derivative, but separate and independent actions.

*Id.* at 745 (footnote omitted). Although not specifically deciding the issue, the court also recognized that a distinction exists between witnessing the serious injuries to a close relation and not being in the accident or at the scene of the accident, as under the circumstances of this case, stating:

> We do not decide herein whether a person who meets the *Lejeune* [15] requirements but who was not timely present at the immediate scene of the incident has incurred his or her "bodily injury" "in the same accident" as the "bodily injury" to the original injured party.

*Id.* at 745 n. 19. It is undisputed that the Smiths did not witness the accident nor were they "timely present at the immediate scene of the accident." *Id.* Thus, the cases relied upon by the appellees are inapposite here.

Based on the analysis of the authorities cited above, we adopt the proposition that, if the Smiths had been witnesses to the event that caused Christopher's death, they would have *non-derivative* and wholly independent NIED claims that would trigger separate single limits under the policy as to each proven claim.

Because "[i]nsurance policies are governed by statutory requirements in force and effect at the time such policies are written[,]" *AIG Hawai'i Ins. Co. v. Estate of Caraang,* 74 Haw. 620, 633, 851 P.2d 321, 328 (1993) (citation omitted) (internal quotation marks omitted), we next examine whether HRS § 294–10(a)(1) is consistent with the proposition that derivative claims are limited to a single per person limit. As stated previously, HRS § 294–10(a)(1) provides in relevant part:

> **Required policy coverage.** (a) In order to be a no-fault policy, an insurance policy covering a motor vehicle shall provide . . . insurance to pay on behalf of the owner or any operator of the insured motor vehicle using the motor vehicle with the express or implied permission of the named insured, sums which the owner or operator may legally be obligated to pay for injury, death, or damage to property of others . . . which arise out of the ownership, opera-
> tion, maintenance, or use of the motor vehicle:
>
> (1) Liability coverage of not less than $35,000 *for all damages arising out of accidental harm sustained by any one person as a result of any one accident applicable to each person sustaining accidental harm* arising out of ownership, maintenance, use, loading, or unloading, of the insured vehicle[.]

(Emphasis added.)

In construing the phrase "all damages arising out of accidental harm sustained by any one person as a result of any one accident," *Doi, Hara,* and *Villanueva* agree that "all damages" include derivative claims arising from the injury or death of the host plaintiff and are therefore subject to the "one person" statutory minimum.

In *Doi,* the ICA held that "all damages" included loss of consortium and reasoned that

> where a tortfeasor's automobile liability insurance policy meets the requirements of § 294–10(a)(1), the tortfeasor is not an uninsured motorist, notwithstanding the fact that the spouse of a person injured in an automobile accident is unable to recover his or her loss of consortium damages from the tortfeasor's policy because the injured spouse's damages exceed the limits of the tortfeasor's policy. In such circumstances, the injured parties' automobile insurer is not liable to compensate them under their uninsured motorist coverage.

*Doi,* 6 Haw.App. at 468, 727 P.2d at 891 (footnote omitted).

In *Hara,* we approved the ICA's ruling in *Doi* and indicated that, in the context of uninsured motorist coverage, the plaintiffs-survivors's derivative wrongful death claims, brought pursuant to HRS § 663–3, were limited to the statutory per person minimum amount of not less than $25,000. The plaintiffs-survivors in *Hara* sought uninsured motorist coverage under their own personal au-

---

**15.** "Lejeune" refers to *Lejeune v. Rayne Branch Hospital,* 556 So.2d 559 (La.1990) wherein the court recognized a cause of action for witnessing serious injury to a close relation in either viewing the event causing the injury or coming onto the scene of the event soon thereafter.

tomobile policy on the theory that the responsible tortfeasors were underinsured.[16]

Also, in *Villanueva*, the court stated:

under the express terms ... [of HRS] § 294–10(a)(1), [the insurer] is obligated to pay "all damages" arising out of [decedent's] death *up to the respective policies' limit of liability* for uninsured motorist coverage. The court construes the term *"all damages" to include those for emotional distress arising from bodily injury or death* of a close family member in an automobile accident.

*Villanueva*, 716 F.Supp. at 459 (footnote omitted) (internal citations omitted) (emphasis added).

We agree with the above analysis of all three courts and therefore hold that the no-fault statute does not require a separate statutory minimum to cover each of the Smiths' derivative NIED claims.

Appellees, however, contend that even if the no-fault statute does not require separate "per person" limits to the Smiths, "[t]he language of First Insurance's no-fault policy requires separate limits of coverage for each of the Smiths who can claim for emotional distress. Indeed, because this is so, the circuit court's ruling can be sustained *without any* reference to the minimum liability limit requirements of the no-fault statute." (Emphasis in original.)

As stated previously, the policy's limitation of liability provision provides in relevant part:

The limit of liability shown in the Declarations *for "each person"* for Bodily Injury [accidental harm] Liability [$50,000] is our maximum limit of liability for *all damages*

*for bodily injury [accidental harm] sustained by any one person in any one auto accident.* However, if our limit of liability shown in the Declarations for "each accident" for Bodily Injury [accidental harm] Liability is reached, our limit of liability for Bodily Injury [accidental harm] for "each person" will then be a maximum of $25,-000.[17] ... This is the most we will pay regardless of the number of:

1. Covered persons;

2. Claims made;

3. Vehicles or premiums shown in the Declarations; or

4. Vehicles involved in the auto accident.

Policy at 3 (emphasis added). We believe the language of the aforementioned policy provision is plain and clearly provides for the same result as the no-fault statute.

Appellees, however, relying on *Anderson v. St. Paul Mercury Insurance Co.*, 792 S.W.2d 440 (Mo.App.1990), argue that the language of the limitation of liability provision is ambiguous. In *Anderson*, the plaintiff, wife of the injured claimant, asserted a claim for loss of consortium. The insurance company maintained that, because it had settled with the husband for the "each person" policy limit of $100,000.00, a separate limit for the wife's derivative loss of consortium claim was not available.

The court noted that the limit of liability provision at issue case provided that the "each person" limit was the limit for "all damages for bodily injury sustained by any one person in any one accident"—which is

---

**16.** At the time of the *Hara* accident, in 1979, underinsured motorist coverage was not an optional coverage required by Hawai'i's no-fault law. In *Hara*, we noted that

[i]n a series of cases beginning with *Palisbo v. Hawaiian Insurance & Guaranty Co.*, 57 Haw. 10, 547 P.2d 1350 (1976), we have held that where more than one person is injured in an automobile accident, and because of the limits to liability coverage in the negligent party's insurance policy, one, or more, of the injured persons cannot recover the statutory minimum amount per person set out in HRS § 287–7, the negligent party is underinsured,

and an injured party may recover, from his or her own insurer, the difference between the amount obtained from the negligent party's insurer and the amount available under the uninsured motorist coverage in the injured party's own policy.

*Hara*, 70 Haw. at 44, 759 P.2d at 1375.

**17.** The parties have stipulated that, if the circuit court's ruling is affirmed on appeal, First Insurance's policy provides a maximum limit of $50,-000 for Christopher's estate, $50,000 for one additional Smith party, and $35,000 for each additional Smith party.

identical to the provision at issue here.[18] The court held that the provision was ambiguous because "the participle 'sustained' could be read as referring to 'damages' or 'bodily injury'," *id.* at 441, and therefore allowed separate "each person" coverage for the plaintiff's derivative claim.

However, we are persuaded by the analysis in *Gillchrest v. Brown,* 532 A.2d 692 (Me.1987), which also reviewed the identical language at issue here. Mr. Gillchrest was severely injured in an automobile accident and Mrs. Gillchrest sought a separate per person limit for loss of consortium. The superior court granted summary judgment in her favor; however, on appeal, the Supreme Judicial Court of Maine vacated the judgment on the basis that the superior court misread the limits of liability provision. The maximum amount of liability coverage, pursuant to the defendant's insurance policy, was $20,000 for each person and $40,000 for each accident. The limit of liability provision provided:

> The limit of liability shown in the Declarations for "each person" for Bodily Injury [accidental harm] Liability is our maximum limit of liability for *all damages for bodily injury [accidental harm] sustained by any one person* in any one auto accident. Subject to this limit for "each person[,]" the limit of liability shown in the Declarations for "each accident" for Bodily Injury [accidental harm] Liability is our maximum limit of liability for all damages for bodily injury [accidental harm] resulting from any one auto accident.

*Id.* at 692 (emphasis in original). Finding no ambiguity in the provision, the appeals court stated:

> The $20,000 limitation covers "all damages for bodily injury [accidental harm] sustained by any one person." Simple analysis of that language leads to only one interpretation: the phrase "sustained by any one person" modifies the immediately preceding words "bodily injury [accidental harm]," and not the earlier words "all damages." Thus, the "each person" limits

should be read to apply to "all damages arising out of the bodily injury [accidental harm] that is sustained by any one person."

*Id.* at 693 (brackets in original omitted); *see also Littlefield v. State Farm Fire & Cas. Co.,* 857 P.2d 65 (Okla.1993); *Federal Kemper Ins. Co. v. Karlet,* 189 W.Va. 79, 428 S.E.2d 60 (1993).

We agree with the *Gillchrest* court and adopt the plain reading of the subject phrase and conclude that appellees and the *Anderson* court have created an ambiguity where none exists. Thus, under the unambiguous terms of First Insurance's policy, we read the "each person" limitation to apply to all damages that arise out of the accidental harm that is sustained by any one person in any one accident. *See Karlet, supra; Littlefield,* 857 P.2d at 70 (citing *Gillchrest, supra,* and numerous other cases supporting the proposition that the policy language limiting liability for "all damages due to bodily injury [accidental harm] to one person" is not ambiguous).

In support of our belief that the *Gillchrest* analysis is correct, we note that First Insurance's limit of liability provision essentially tracks the language of HRS § 294–10(a)(1)—which requires that liability, uninsured, and underinsured coverages provide the minimum statutory coverage "for all damages arising out of accidental harm sustained by any one person as a result of any one accident"—upon which *Doi, Hara,* and *Villanueva* relied in holding that per person statutory minimums are not required where the claims are derivative. The policy provision states: "The limit of liability shown in the declarations for "each person" for Bodily Injury [accidental harm] Liability is our maximum limit of liability for *all damages for bodily injury [accidental harm] sustained by any one person* in any one auto accident." Policy at 3 (emphasis added).

Of particular significance is the fact that the phrase "*in* any one auto accident" contained in the policy coincides with the thresh-

---

18.  We do not believe that the insertion of "accidental harm" for "bodily injury" changes the analysis.

old requirement of § 294–6(a) which, as previously noted, provides that persons or their representatives may bring an action in tort due to death or injury as long as they are "such person[s] *in* a motor vehicle accident." Again, none of the Smiths were *in* the accident.

Appellees also urge that First Insurance's policy language—"We will pay damages for bodily injury [accidental harm] or property damage for which any covered person becomes legally responsible because of an auto accident[,]" Policy at 2 (underscoring added) (emphasis in original omitted)—is broader than the limit of liability provision and thus provides separate "each person" coverage for the Smiths' emotional distress claims. Appellees' positions are without merit.

*Anderson,* the very case relied upon by the appellees, cited to *Integrity Insurance Co. v. Naleway,* 719 S.W.2d 24 (Mo.App.1986), a case which held that the identical language set forth above was "clear and unambiguous, and limited Integrity's liability." *Anderson,* 792 S.W.2d at 442.

In *Integrity,* the liability coverage for bodily injury was $25,000.00 per person and $50,-000.00 per accident. The accident victim received one per person limit; his mother sought a separate "per person" limit for medical expenses and loss of services arising from her son's injuries based on the policy language cited above. In holding that the mother was not entitled to another separate per person limit of $25,000.00, the court explained:

> In the instant case, the policy language states clearly and unambiguously the extent of the insurance company's liability. Integrity is responsible for "damages for bodily injury [accidental harm]" to a maximum of $25,000 per person. When a person sustains "bodily injury [accidental harm]," his damages may include an amount for the reasonable medical expenses ... [and] an amount for his loss of services[.]

*Integrity,* 719 S.W.2d at 25 (internal citations omitted). The court concluded, and we agree, that

> [t]here can be no argument that all such "damages for bodily injury [accidental

harm]" is subject to the damage limit for one person under Integrity's policy. Likewise, in the instant case although two persons may have incurred damages from the bodily injury of one person, they are no less subject to the $25,000 limitation for damages for bodily injury to one person.

> In sum, this court is without power to rewrite the insurance contract as the language is clear and unambiguous[.]

*Id.* (citations omitted).

Based on the foregoing, we hold that First Insurance's policy is clear and unambiguous to the extent that it does not require additional per person limits for derivative NIED claims beyond the statutory minimum in this case.

Finally, the Smiths assert that their NIED claims may fall into the exception carved out in HRS § 294–6(d)(2) and (3) because they intend to "prove in the tort suit that [Frederick] is guilty of criminal conduct *and* is liable for punitive damages." HRS § 294–6(d) provides in relevant part:

> (d) No provision of this section [abolition of tort liability] shall be construed to exonerate, or in any manner to limit the criminal or civil liability, including special and general damages, of any person who, in the maintenance, operation, or use of any motor vehicle;
>
> (2) Engages in criminal conduct which causes injury or damage to person or property; or
>
> (3) Engages in conduct resulting in punitive or exemplary damages.

Because we have concluded that the Smiths' NIED claims are derivative and therefore limited to a single "each person" limit applicable to the "host" tort plaintiff under First Insurance's policy, we need not further address the argument raised here.

Based on the foregoing, we hold that, in the context of Hawai'i's no-fault law and under the limitation of liability provision in First Insurance's policy, emotional distress claims under the circumstances of this case are derivative and as such do not require separate "each person" coverage to the Smiths.

### C. *Motion for Reconsideration*

First Insurance contends that HRS § 294–10(a)(1) does not require liability coverage for vehicles other than those insured under the policy and because Frederick drove a vehicle not owned by the Lawrences and not insured under the First Insurance automobile policy, the terms of its policy are not subject to the mandatory liability coverage limits of the no-fault statute.

In opposition, the appellees urge this court not to consider this issue because First Insurance raised it for the first time in their motion for reconsideration, despite the opportunity for it to have raised such an argument in its motion for partial summary judgment.

 We disagree with First Insurance's contention that "[r]ather than present[ing] a new issue on appeal, this point is merely additional authority that reinforces First Insurance's position on the substantive legal issue on appeal, that is, the availability of separate policy limits for derivative emotional distress claims." The issue does not merely raise "the availability of separate policy limits for derivative emotional distress claims"; the issue raised is whether there is any coverage at all.

Clearly, "[t]he purpose of a motion for reconsideration is to allow the parties to present new evidence and/or arguments that could not have been presented during the earlier adjudicated motion." *Amfac, Inc. v. Waikiki Beachcomber Investment Co.*, 74 Haw. 85, 114, 839 P.2d 10, 27, *recon. denied*, 74 Haw. 650, 843 P.2d 144 (1992). We believe the present issue could have and should have been asserted below by First Insurance in its motion for partial summary judgment. Consequently, we hold that the trial court did not abuse its discretion in denying First Insurance's motion for reconsideration.

### IV. *CONCLUSION*

Based on the foregoing, we conclude that: (1) the statutory definition of accidental harm includes emotional distress; (2) although NIED claims are entitled to independent protection under general Hawai'i tort law, claims for emotional distress under Hawai'i's No–Fault Law, HRS chapter 294, are derivative if they (a) arise in the context of motor vehicle accidents and (b) "owe their existence," *see supra* note 10, to an injury to another person that does not involve the kind of direct emotional trauma to a witness or bystander, as in *Ramsey, Wolfe, Foust,* and *Crabtree, supra;* and (3) derivative claims are subject to the "each person" liability coverage limit; therefore, based on the specific language of First Insurance's policy, which we believe to be consistent with the no-fault law, we also conclude that the derivative NIED claims of the Smiths are subject to a single liability coverage limit. Accordingly, we affirm in part and reverse in part the circuit court's denial of First Insurance's motion for partial summary judgment.

Because First Insurance's motion for reconsideration raised an issue which it could have and should have raised in its motion for partial summary judgment, we hold that the circuit court did not abuse its discretion in denying First Insurance's motion for reconsideration.